DANA PIERCE, Administrator of NATHANIEL MILLER, v. CHARLES R. WHITMAN.

*Union school districts.   Authority of town over territory of union district.   Waiver of rights by district.*

When a union school district has been formed from territory in two towns, either by concurrent vote of the towns, or by act of the legislature, previous to the power to constitute such districts being conferred upon towns, *quære*, whether one of the towns has authority to alter the limits of such district by setting individuals, within such town, from such union district to another district within the town.

But if the exercise of such authority by the town be inconsistent with the rights of such union district, such rights may be waived by vote of the district; and if the district consent, by vote, that an individual within its limits may unite with some other district, and such individual be set, by vote of the town, to another district, the union district cannot afterwards assess a tax against such individual.

TRESPASS for taking a wagon.   The suit was brought in the county of WINDSOR, and was tried upon a case stated by the parties, substantially as follows.

By the statute of 1804,—Acts of 1804, p. 54,—certain territory in the towns of Hartford and Pomfret was created a school district; and the district was duly organized and has existed from that time as a legal school district, unless the facts hereinafter stated constitute an exception.   Nathaniel Miller, the intestate, lived at the time of his decease, (which was since the commencement of this suit,) and for several years previous, in Hartford, and within the boundaries of said district, as established by said statute.   At a very early period some portion of the territory embraced within said district, as constituted by the statute of 1804, became severed from said district, and has ever since remained separated therefrom,—but in what manner this was done, whether by act of the legislature, or by act of the town in which such territory lay, is not now known.   At a meeting of the inhabitants of the town of Pomfret, duly warned and held September 2, 1828, a part of the territory comprised in said union district was, by vote, transferred to a new district, then crea-

ted in Pomfret, styled district No. 15; and the territory, so transferred, has ever since been treated, by all concerned, as belonging to district No. 15. At the annual town meeting of the town of Hartford, in March, 1838, a vote of the town was passed, in due form, transferring to a school district in Hartland one Moses Barron, who resided in Hartford, within the boundaries of the union district, as constituted by the statute of 1804; and no vote was ever passed by the union district, or by the town of Pomfret, assenting to such transfer; but said Barron was ever afterwards treated, by all concerned, as belonging to the school district in Hartland. At a regular meeting of the union school district, held October 9, 1848, duly warned, it was voted by the district, that the said Nathaniel Miller "have leave to withdraw" from the union district, "and associate with some other district." On the seventh day of March, 1848, the town of Hartford, at their annual town meeting, duly warned for that purpose, passed a vote to divide the union district, and to create, from the territory taken from that district, with other territory, a new school district, which was called district No. 19. The territory so set off by that vote from the union district to district No. 19 constituted but a part of the territory within the union district, belonging to Hartford; four farms in Hartford still belonged to the union district. Nathaniel Miller resided upon the territory so transferred by that vote from the union district to district No. 19, and had no taxable property within the limits of the union district, except what was embraced within the territory so set to district No. 19. District No. 19 was duly organized, and has acted as a district, and kept up its organization, and supported schools, since it was so constituted. And since district No. 19 was so constituted, the town of Hartford have paid to district No. 19 the public money for the scholars within the same. Some of the inhabitants of district No. 19, since its organization, have sent scholars to the school in the union district; but under what circumstances, or for what particular reasons, does not appear. On the twenty sixth day of February, 1849, a meeting was warned, in due form, of the union school district, and held in pursuance thereof, at which the district voted a tax of eight cents on the dollar, to defray the expenses of schools; and the prudential committee made a rate bill in due form, including therein the names of all those who resided within the limits of dis-

trict No. 19, who had belonged to the union district on the first day of April, 1848, and among the rest Nathaniel Miller. Miller had a grand list in Hartford, on which he was liable to pay taxes, and the amount of that list was correctly entered upon the rate bill. This rate bill, with a warrant attached in due form, was delivered to the defendant, who was collector of the union district, elected at a meeting held on the twenty sixth day of February, 1849 ; and the defendant distreined the property sued for in this action, for payment of the tax, and sold the same,—pursuing the proper forms of law in this respect. The value of the property was twelve dollars ;—and it was agreed, that if the plaintiff was entitled to recover, upon these facts, he should have judgment for twelve dollars and interest from the first day of November, 1849; and that otherwise the defendant should recover his costs.

Upon these facts the county court,—February Adjourned Term, 1851,—COLLAMER, J., presiding,—rendered judgment for the defendant. Exceptions by plaintiff.

*Washburn & Marsh* for plaintiff.

The " Union School District" was created by the statute of 1804, with " all the rights, privileges and immunities, which are enjoyed by other school districts in this state." For ascertaining the extent and limits of these rights, we must refer to the then existing statutes of the state. By the statute of 1787, each town in the state was empowered to divide its territory into so many districts, as should be found convenient, " and the same to alter from time to time." This provision was repeated in the statute of 1797; Sl. St. 589; and was in force, when the statute of 1804 was enacted; and the same provision was repeated in the statute of 1827,—Thomp. St. 136,—and in the Revised Statutes, and is now in force. Rev. St. 111, § 2. The union district, then, being created with no greater rights, than any other district in the state, and every other district being made subject to the general power of the town, in which it was located, to divide or alter it at pleasure, the plaintiff insists, that the vote of Hartford, annexing him to district No. 19, was fully authorized by law, and that he was not afterwards subject to taxation in the union district.

The provision in reference to the dissolution, by three justices of

the peace, of districts constituted from territory in two towns,— Rev. St. 115, § 21,—does not apply.   The first statute authorizing towns to form union districts was that of November 5, 1808; Sl. St. 593; and this provision was re-enacted in the statute of November 9, 1827.   Thomp. St. 139, § 8.   But no provision was made for the dissolution of such districts, until the statute of October 28, 1828,—Thomp. St. 145,—which is substantially re-enacted in the Revised Statutes; Rev. St. 115, §§ 21–23; and this provision applies only to cases, where the district has been formed by a *concurrent vote* of the two towns.   *Hewett* v. *Miller*, 21 Vt. 402.   There may be many cases, in which a division of a union district, by annexing a portion of the territory within one of the towns, may be proper, and yet a dissolution of the district not be required.   But the power of three justices to act extends only to cases, where they shall determine, that the district thall be *dissolved*.   21 Vt. 402. Rev. St. 115, §§ 22, 23.   In case of a division, merely, of a part of the territory in one of the towns, the district remains a legal corporation, as before; *Waldron et al.* v. *Lee*, 5 Pick. 323; and this cannot be done, unless by the town.   And that this should be done by the town has been the practical construction of the statute of 1804, as shown by the case stated.

But if the exercise of such power by the town be inconsistent with the rights of the union district, the district may, by its own act, waive its rights in this respect; and the case stated shows that it has done so, by the vote of October, 1848.

*Tracy, Converse & Barrett* for defendant.

1. Hartford had no power to divide the school district, it having been formed originally by special act of the legislature.   It requires the same power to divide, as to dissolve, or annihilate; such power exists only in the legislature.   If, however, it exists any where else, it must be in the tribunal provided for by Rev. St. 115, § 21,—a judge of the county court and three justices of the peace.   If the district had been formed by a concurrent vote of Hartford and Pomfret, such must have been the mode of its division, or dissolution; *Hewett* v. *Miller*, 21 Vt. 402; and there is the same reason for the intervention of a disinterested tribunal in the present case.   That the attempts of Pomfret in 1828, and of Hartford in 1838, to take a

part of the union district, or a part of the inhabitants, were clearly illegal, there can be no doubt; and whether those parties have become, from lapse of time and acquiesence, effectually severed, it is not important to inquire.

2. The vote of the district of October 9, 1848, that Miller have leave to withdraw, &c., did not discharge Miller from his relationship to the district, or his liability to contribute to its expenses. 1. The district had no power to set off individuals. 8 Vt. 402. 10 Vt. 480. 21 Vt. 402. 2. Towns, and not school districts, have that matter in charge, except when the legislature interferes. Rev. St. 111, c. 18, §§ 2, 5. 3. The district had no power, either to set off Miller, or to excuse him from paying taxes, or contributing to the general objects, for which school districts are created. *Hooper* v. *Emery*, 14 Maine 375. 4. If they can vote one off by his request, they can exclude another, against his will, from the privileges of the district, while his property in the district is liable to be taxed for its expenses. Rev. St. 114, § 15; 542, § 11. Acts of 1850, No. 36. 5. But whatever authority the district had, Miller has not complied with the condition, upon which he was set off. He has never united with any other district, unless the forming of district No. 19 by Hartford was valid. If valid, he was already " *withdrawn.*" This shows conclusively, that the district never consented to or acquiesced in the doings of Hartford, and that those proceedings were not regarded as of any validity. Civil communities, like counties, towns and school districts, are *quasi* corporations, with only such powers as are necessary, to enable them to carry out the objects of their creation. *Sch. Dist. No.* 4 v. *Wood*, 13 Mass. 193. Ang. & Ames on Corp. 20, 21. *Gorham* v. *Springfield*, 21 Maine 58. *Collamer* v. *Drury*, 16 Vt. 574. *Waters* v. *Daines*, 4 Vt. 601.

The opinion of the court was delivered by

REDFIELD, J In this case, the district being created by act of the legislature, it might originally have required the same power to dissolve it. But when, by the general laws of the state, in 1828, a provision was made for dissolving union school districts, we think that provision was intended to apply to all union districts, however created. It would be highly improbable, that the legislature should

intend to retain so limited and inconvenient a prerogative thereafter.

And whether during all this time, and subsequently, such school districts are to be regarded as exempt from the authority of the town to alter the limits in any manner, by setting individuals to other school districts, as they would best be accommodated, it is not necessary here to determine. It is obvious, we think, that such a power might be convenient to reside in the town, and be recognized, without being at all inconsistent with the denial to the towns of the power to dissolve such districts.

But however this may be, we think it most obvious, that if there were any want of such power, it must be because of some other right, incompatible with its exercise, residing either in the district, or the individuals concerned. And these rights it is certainly competent for them to waive. That is so in regard to almost all rights, even the most important, of a merely pecuniary character. And in the present case, that was done, both by the plaintiff and the district. And the plaintiff having acted upon the consent of the district, and been set to another district, or his land incorporated into a newly erected district, which is the same thing, the union district lost all power to assess any tax upon him, or his property. For we think, their vote must be construed, as a consent for the plaintiff and his property to be set to another district. And he would be liable to pay taxes there thereafter.

Judgment reversed, and judgment for plaintiff on the case agreed.