EBENEZER B. JONES v. ELI CAMP, apt.

## School Districts.

School districts formed of parts of two or more towns may be dissolved, or their limits altered, by mutual consent.

The entire control by a town over a farm and its occupants, so far as relates to its school district taxation and connection, and the acquiescence in such acts by the district from which such farm is set, for a quarter of a century, is equivalent to an express assent on the part of the district to the separation of the farm from the school district. After such a long period of acquiescence, it may fairly be presumed that the act of the town, making the alteration, had its origin in the express assent of the district.

QUERE.—Whether one town of its own will, without the consent of the other town and the district, and against their wishes, can set off a part of such district to another district.

TRESPASS for taking certain personal property. Plea, not guilty, with notice that the property in question was taken by the defendant as collector of school district No. 8 in Chelsea, and No. 15 in Brookfield, by virtue of a regular tax bill and warrant, &c.

The case was tried upon an agreed statement of facts. It was agreed that in 1816 district No. 8 in Chelsea, and district No. 15 in Brookfield, were united by a concurrent vote of both towns, and since that time have kept up an organization. From 1816 to 1835 the farm of the plaintiff, and the persons residing on and occupying it, belonged to said district. In 1835 one Curtis owned and occupied the farm, and the town of Chelsea at their annual March meeting in that year voted to set Curtis to district No. 15, in Tunbridge, and that district voted to receive him ; and after that Curtis was treated as belonging to that district by voting at their meetings, holding offices and paying taxes.

In 1845 the town of Chelsea at their annual March meeting voted to set the farm, on which Curtis had formerly resided, to district No. 1, in Chelsea. At that time the farm was owned and occupied by Caleb Douglas, who continued to be an inhabitant of district No. 1 from 1845 to 1854, when he sold the farm to the plaintiff, who has owned and occupied it ever since. In 1854 the town of Chelsea voted to set this farm to district No.

15 in Tunbridge, and district No. 15 in Tunbridge voted to receive it; and thereupon the plaintiff sent scholars to school, voted, paid taxes, and held offices in said district. Since 1835 neither the said Curtis nor any other person owning and occupying this farm has either sent to school, paid taxes, or held office in district No. 8 in Chelsea, nor has there been any tax collected upon this farm, or against the several persons occupying it, until the present tax upon which this property was taken.

Upon the foregoing statement of facts the county court at the June term, 1860, BARRETT J., presiding, rendered judgment, *pro forma*, for the defendant.

Exceptions by plaintiff.

*W. Hebard,* for the plaintiff.

*F. V. Randall,* for the defendant.

PIERPOINT, J.    It appears from the case that in 1816 a school district was formed composed of district No. 8 in the town of Chelsea, and No. 15 in the town of Brookfield, by the concurrent vote of the two towns, and that such district has kept up its organization from that time to the present; that the farm on which the plaintiff resides, and on which the tax was laid, which the defendant, as collector of said district, was attempting to collect when he took the property sued for, lies within the limits of said district as originally formed; that no attempt was made to vary or alter the lines or extent of said district from the time of its organization up to 1835; that at the annual March meeting of that year the town of Chelsea voted to set the occupant of the farm now owned by the plaintiff to district No. 15 in the town of Tunbridge, and such district voted to receive him according to the statute; that from that time the occupant of the farm acted and was treated as belonging to district No. 15 in Tunbridge, until 1845, when the town of Chelsea by vote in due form took the occupant of said farm from said district No. 15 in Tunbridge, and set him to district No. 1 in Chelsea; that said occupant continued a member of district No. 1 in Chelsea until 1854, when the plaintiff became the owner of said

farm, when by votes of the town of Chelsea and school district No. 15 in Tunbridge, the farm was again set to district No. 15 in Tunbridge; that from that time to the present the plaintiff has acted with and been regarded as belonging to said district No. 15 in Tunbridge.

It is insisted that all these proceedings on the part of the town of Chelsea were irregular and void, on the ground that after the district was formed in 1816, the town had no control over its boundaries or its inhabitants, as members of such district; that no change could be made therein without first causing the district to be dissolved according to the provisions of the 47th section of the 20th chapter of the Compiled Statutes, relating to school districts. This section provides a method by which districts, formed of parts of two or more towns, may be dissolved; but we do not think it is the only method by which such a district may be dissolved, or its limits altered. It may unquestionably be done by mutual consent. This is fully recognized in *Pierce* v. *Whitman*, 23 Vt. 626. Whether one town of its own will, without the consent of the other town and the district, and against their wishes, may set off a part of such district to another district, is a question of more difficulty, and one which we do not find it necessary to decide in this case. That it may be done with the consent of such district is expressly decided in *Pierce* v. *Whitman* before referred to. The case here does not show an express assent on the part of the district to the acts of the town of Chelsea, but the entire control over this farm and its occupants, so far as relates to its school district taxation and connection, has been exercised by the town of Chelsea, and has been substantially acquiesced in for near a quarter of a century by the district. It is true the case shows that recently the district have occasionally laid taxes on this farm, and on one occasion asked the plaintiff to pay a tax, which he refused, and the matter was dropped. This is the only instance in which the district have ever asked for a tax, or attempted to collect one before that, out of which this controversy arose. We think it is now quite too late for them to attempt to exercise their authority over this territory; indeed it may fairly be presumed, after such a long period of acquiescence, that the act of the town in making the transfer had

its origin in, or was done in connection with, the express assent of the district; and, at all events, after having stood quietly by and seen the transfer made, and rights thereby vested in other districts, they cannot now be permitted to come in and question its validity.

The judgment of the county court is reversed, and judgment for the plaintiff for $2,50 and cost, according to the stipulation of the parties.