[Civil No. 1444.   Filed June 12, 1915.]

[149 Pac. 382.]

## JOHN W. FAULKNER, Appellant, v. BOARD OF SUPERVISORS OF GILA COUNTY, ARIZONA, Appellee.

1. MUNICIPAL CORPORATIONS—INCORPORATION OF TOWN—STATUTES—NOTICE.—Under Civil Code of 1913, paragraph 1822, providing that whenever two-thirds of the taxable inhabitants of any town containing a population of 500 or more shall present their petition to the board of county supervisors, and the supervisors shall be satisfied that two-thirds of the taxable inhabitants have signed such petition, they may, by an order of record, incorporate such town, the board

of supervisors, on consideration of a petition for the incorporation of a town, fair and legal upon its face, is not required to give any notice of the petition or any hearing thereon.

2. CERTIORARI—JUDICIAL PROCEEDINGS—BOARD OF SUPERVISORS—STATUTES.—Civil Code of 1913, paragraph 1822, provides that whenever two-thirds of the taxable inhabitants of any town containing a population of 500 or more, shall present their petition to the board of county supervisors, and the supervisors shall be satisfied that two-thirds of the taxable inhabitants have signed such petition, they may, by an order of record, incorporate such town. Paragraph 1495 provides that the writ of *certiorari* shall be granted where an inferior tribunal or board exercising judicial functions has exceeded its jurisdiction, and there is no appeal nor any plain, speedy or adequate remedy. *Held*, that the writ could not be used to review the action of a board of supervisors in incorporating a town, since such action was not judicial, but was an exercise of legislative or ministerial functions; and that Civil Code, title 6, chapter 8, providing that the attorney general or county attorney might institute *quo warranto* against a corporation usurping any franchise, and that on their refusal to do so, any person, upon leave of the court might bring the action, provided a complete and ample remedy for any usurpation of the municipal franchise.

3. MUNICIPAL CORPORATIONS—INCORPORATION—CONTEST.—A suit by residents and taxpayers of a town to test the validity of its incorporation on petition to the board of supervisors, should take such form as to allow the town to appear in court and defend.

[As to collateral attack on legality of municipal organization, see note in Ann. Cas. 1913A, 592.]

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Affirmed, with directions that application for writ of *certiorari* be dismisssed.

Messrs. Rawlins & Little and Mr. J. M. Feier, for Appellants.

Mr. Norman J. Johnson, County Attorney, for Appellee.

ROSS, C. J.—June 1, 1914, there was filed with the board of supervisors of Gila county a petition asking that the town of Winkelman be incorporated. The petition recited that the town contained a population of 500 or more inhabitants, described its boundaries by metes and bounds, asked to be incorporated under the name "town of Winkelman," and

represented that the signers thereof constituted more than two-thirds of the taxable inhabitants of the town as proposed to be incorporated. June 6, 1914, the board of supervisors considered the petition and caused to be spread upon its minutes a resolution that recited, among other things, as follows:

"Whereas, after due inquiry the board ascertained that there were ninety-four (94) names of taxable inhabitants upon the petition hereinbefore mentioned; and whereas, this board being satisfied that the town of Winkelman and the portion thereof described in the matters (metes) and bounds hereinafter mentioned contains a population of more than five hundred (500) inhabitants; and whereas, this board is satisfied that more than two-thirds of the taxable inhabitants of the town of Winkelman have signed the petition heretofore mentioned:

"Now, therefore, upon motion duly made, seconded and carried it is ordered and declared that the town of Winkelman is hereby incorporated with the following described metes and bounds, to wit: [Here follows the description.] And from the date hereof the inhabitants within the metes and bounds hereinbefore mentioned shall be and they are hereby declared to be a body politic and corporate by the name of 'town of Winkelman.' . . .''

In the same resolution the board appointed the members of the first common council.

About September 1, 1914, the petitioners herein, of which there are three, filed their application with the superior court of Gila county alleging that they were residents of and taxpayers in said town of Winkelman; that the board of supervisors acted without jurisdiction in making the order of incorporation in that they failed to take or hear any evidence whatsoever to establish or tending to establish that the town of Winkelman contained 500 or more inhabitants; or that two-thirds of the taxable inhabitants residing within the proposed town signed said petition; or that the signatures to petition were genuine, and prayed a writ of *certiorari* be issued to the board of supervisors, commanding them to make return of their proceedings in the matter of the incorporation of Winkelman together with the evidence taken and heard

by them in such proceedings. The writ was issued September 5, 1914, returnable September 28, 1914.

Before the return was filed by the board, a motion was made to quash the writ of *certiorari* on account of defect of parties plaintiff, and inappropriate remedy. We do not give the substance of the return as we do not think it important to the decision. The motion to quash was granted and judgment entered for appellee, from which this appeal is taken.

The power to grant licenses to communities amounting to towns and cities of 500 population or more, to exercise the functions of municipal corporations is conferred on the boards of supervisors by paragraph 1822 of the Civil Code of 1913. The boards of supervisors are constituted by this statute the agents of the state with authority, upon being satisfied that the conditions therein prescribed exist, to issue the state's license to petitioning communities endowing them with certain of the powers and prerogatives of the sovereign. It is not provided by this statute what steps the board shall take in determining the qualifications of the city or town to entitle it to incorporation. The condition is that the board "shall be satisfied," that the proposed corporation contains a population of 500 or more, and that two-thirds of the taxable inhabitants therein have joined in the petition praying for the incorporation, whereupon it becomes the duty of the boards by an order to be entered of record to declare such city or town incorporated.

It appears from the application or petition of appellants for the writ of *certiorari* that on June 6, 1914, the board of supervisors acting upon a petition praying for the incorporation of the town of Winkelman, fair and legal upon its face, made and entered an order declaring the town incorporated, and appointed for it a common council, vested with the exercise of its corporate powers. See section 1825, Civil Code 1913. There is nothing in the statute providing for notice or hearing upon the petition to incorporate. In *Territory v. Town of Jerome*, 7 Ariz. 320, 64 Pac. 417, a proceeding in the nature of *quo warranto*, it was held that the failure to provide for notice did not invalidate the law. The court in that case said:

"The legislature of the territory of Arizona, the same as any other legislature when not otherwise restricted, has the

right to create, enlarge, and restrict municipal franchises, and especially those municipal franchises which look to the government of a portion of the people. It has a right to enlarge or curtail the territorial boundaries of a municipal corporation. It has a right to do that quickly, instantaneously, without notice to anybody. . . . It was not necessary for the legislature, in passing a general act, which may be complied with and must be complied with by every community seeking to be incorporated as a city or town, to provide for the publication of notice or issuing of summons to anyone, or the giving of any notoriety to what two-thirds of its taxable inhabitants demand."

If no notice of the application for incorporation is necessary under the law, it would follow that no hearing was required, the only duty of the board being to satisfy themselves from an examination and inspection of the papers presented that the community asking for incorporation contained 500 or more inhabitants, and that two-thirds of the taxable inhabitants thereof had joined in the petition praying for incorporation.

It is provided in paragraph 1495 of the Civil Code of 1913, that the writ of *certiorari* "shall be granted in all cases when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, and there is no appeal, nor, in the judgment of the court, any plain, speedy and adequate remedy." This writ cannot be used to review the actions of inferior tribunals, boards or officers, in the exercise of legislative, executive or ministerial functions. It is confined to a review of judicial action, and then only to determine whether the inferior tribunal, board or officer has exceeded its jurisdiction, or acted without jurisdiction. As was said in *McKenzie* v. *Board of Education*, 1 Cal. App. 406, 82 Pac. 393:

"It is not a writ of error. Its purpose is not to consider errors or irregularities committed in the exercise of an admitted jurisdiction, nor to correct mistakes of law in conducting a proceeding of which the inferior tribunal, board, or officer had jurisdiction. Nor can it be used for the purpose of determining whether or not the evidence was sufficient to support the particular order, resolution or matter complained

of, provided the law and the machinery employed were such as to give the inferior tribunal jurisdiction.''

It seems quite clear that in passing the order here attacked, the board of supervisors were not exercising any judicial power. The petition presented to the board was sufficient in law. That it conformed ·to the statute in substance and form is not questioned. Its presentation to the board conferred jurisdiction on that body to act. They could act upon an *ex parte* petition. They count the population within the proposed incorporation and ·determine if there are 500 or more. This is a clerical, ministerial act. They then ascertain the number of taxable inhabitants in the proposed incorporation, and by the application of arithmetical principles find out if two-thirds of the ·taxable inhabitants have signed the petition for incorporation—another ministerial act. It is doubtful if they may change the boundaries and give the incorporation other boundaries than those set forth in the petition. But if that may be done, it is legislative action and not judicial. *Borchard* v. *Board of Supervisors,* 144 Cal. 10, 77 Pac. 708, 710.

The 'board's only judicial act, if it may be said so ·to be, was the passing upon the sufficiency of the petition to invoke their jurisdiction in connection with the further necessary legislative and ministerial acts·to satisfy them that the prayer of the petition should be granted. The action of the board, of which complaint is made, not being judicial, the proceeding by writ of *certiorari* to review the action, is·not authorized by the law. If, in fact, the board of supervisors should have exceeded the authority granted them by the state, and declared a community·containing a population of less than 500 incorporated, or declare it incorporated when less than two-thirds of the taxable inhabitants have petitioned for incorporation, even though its population may be 500 or more, who should be permitted ·to complain? The municipal franchise is a grant by the state under a general law. It may condone or overlook, for the public good, any irregularities or errors of its agent in granting or issuing the franchise or license. In this case, ·the franchise to act as a municipal corporation was granted to the town of Winkelman on June 6, 1914. On that date a ·common council, in which its corporate powers are vested, was appointed. Presumably it took up the duties

and functions imposed by the acceptance of the franchise and entered upon their discharge by providing sanitary and police regulations, making of local improvements, and incurring debts and obligations.

The parties who bring this proceeding were not, under the law, entitled to be noticed or to be heard, except perhaps as a matter of grace, upon the petition for incorporation. If parties have no legal right to be heard *in limine,* may they, after proceedings have been had affecting a municipal corporation, in their private capacity, institute an action which, if successful, would annul the franchise and all acts of the corporation thereunder? We think a contrary policy is contemplated, and that the legislature has provided a complete and ample remedy where there is a usurpation of any of the state's franchises. It is provided in chapter 8, title 6 of the Civil Code, that the attorney general or county attorney may in proper cases institute proceedings in the nature of *quo warranto* against any person, association or corporation who usurps any franchise, and in case these officers refuse to bring such action any person upon leave of the court may bring the action.

McQuillin on Municipal Corporations, section 158, says: "Generally, the state, being the creator of municipal corporations, only is permitted to question their creation or impeach their corporate existence by information in the nature of *quo warranto,* or other direct proceeding."

Aside from the general policy announced in this rule, it should be borne in mind that in the proceeding by *certiorari,* neither the municipality nor the taxable inhabitants who petitioned for incorporation are made a party to the action. The suit should take such form as to allow the incorporation to appear in court and defend. *Velasques* v. *Zimmerman,* 30 Colo. 355, 70 Pac. 419.

Judgment is affirmed, with directions that the application for writ of *certiorari* be dismissed.

FRANKLIN and CUNNINGHAM, JJ., concur.