# CHARLESTON.

B. G. WEST *et als.* v. THE WEST VIRGINIA FAIR ASSOCIATION *et al.*

Submitted May 13, 1924.     Decided June 24, 1924.

APPEAL AND ERROR—*When Order of Circuit Court Directing Issuance of Certificate of Incorporation to Municipality and Determining Whether Law has Been Complied With Not Reviewable.*

In directing the clerk by entry of order to issue a certificate of incorporation to a municipality under sec. 9, chap. 47, Code, and in determining that the provisions of that chapter relative to the formation of such municipality have been substantially complied with, the circuit court acts as an agency of or tribunal representing the legislature, and its findings and order are not subject to review by this court, unless plainly arbitrary or capricious.

Error to Circuit Court, Harrison County.

Proceeding by B. G. West and others for incorporation of a municipality, in which the West Virginia Fair Association and others filed an answer and remonstrance. Order directing grant of certificate of incorporation, and remonstrants bring error.

*Affirmed.*

*Coffman & Morris,* for plaintiffs in error.
*F. O. Sutton,* for defendant in error.

LIVELY, JUDGE:

B. G. West and several other inhabitants of a territory comprising 247 acres lying on Elk Creek in Harrison county, proceeded to incorporate the territory as a municipality under the name of ''Nutter Fort,'' under chapter 47 of the Code. On May 26, 1923, they presented to the circuit court a verified petition showing that the provisions of chapter 47, Code, relative to the preliminary steps to be taken for the incorporation of a city, town or village under that chapter, had been complied with, exhibiting therewith a survey or map of the territory, a census of the resident population therein, notice that they would apply for a certificate of incorporation to the circuit court on the day stated; the posting of the notice at three of the most public places in such territory; and the result of the election duly held among the inhabitants of the territory in favor of and against the incorporation thereof, and the result of the election; and prayed for an order directing the clerk to issue a certificate of incorporation. The West Virginia Fair Association, a corporation, William G. Kester, George W. Mills and others appeared and offered to file a joint and separate answer and remonstrance, duly verified, to the said petition.

The main issues raised by the petition and exhibits and the answer and remonstrance are:  (1) that petitioner did not sufficiently comply with the statutory requirements for incorporation; and (2) that the facts and circumstances shown by the answer and remonstrance required the court to exclude from the territory to be incorporated, the lands of Mills and Kester and the land of the West Virginia Fair Association.  Numerous affidavits were filed in support of the petition and the regularity and sufficiency of the steps taken to comply with the statutory requirements by petitioners; and numerous affidavits filed by the remonstrants in support of the allegations of the answer.  Upon consideration the court, on the 30th day of June, 1923, entered an order directing that a certificate of incorporation be granted to the town of Nutter Fort, restricting the territory as originally proposed by excluding 14.21 acres of land lying at the extreme western end owned by G. W. Mills, and also exclud-

ing a tract of 4.8 acres of land owned by W. G. Kester lying
on the extreme southern end of the proposed territory; and
finding that all the provisions of law had been complied with
in order to obtain the certificate; and setting out in the order
the territory incorporated by metes and bounds, courses and
distances. The order appointed commissioners to hold the
first election within the town, within sixty days from the
date of the certificate. It will be noted that a portion of the
lands of Kester and Mills and all of the land of the West
Virginia Fair Association (which contains 38½ acres) were
included within the corporate limits. The remonstrants ex-
cepted to the judgment of the court and the exceptions were
incorporated in a bill of exceptions signed by the judge and
made part of the record. The order was suspended pending
application for a writ of error and supersedeas, which was
granted.

Has this court power to review the decision of the circuit
court in granting a certificate of incorporation as provided
in chapter 47 of the Code? This question is not one of first
impression. In the case of *In re Town of Union Mines,* 39
W. Va. 179, this statute authorizing and directing the cir-
cuit courts to grant charters to cities, towns and villages,
(chapter 47), was attacked as unconstitutional because it con-
ferred upon the circuit courts legislative power. The court in
that case held that the functions exercised by the circuit court
under the statute were in their nature judicial and adminis-
trative and in furtherance of the legislative department of
the government; and the act constitutional. The protestants
in that case also sought to reverse the action of the circuit
court because the preliminary proceedings leading up to the
application for the charter, were not in conformity with the
statute; that a majority of the voters residing within the
boundaries had not voted for incorporation; and that qualified
voters had not been allowed to vote. On these points of al-
leged error this court said that the circuit court in discharg-
ing its functions in granting these charters acted as a sub-
ordinate branch or tribunal of the legislature and its action
was not subject to the appellate jurisdiction of the supreme
court. In that case, as in this, the protestants had appeared
before the circuit court and resisted the granting of the

charter, and the circuit court in each case certified bills of exceptions and made them a part of the record. It will be observed that the statute does not provide for an appeal from the action of the circuit court in granting a charter. The circuit court sits as an agency of the legislature to determine whether or not certain preliminary requirements have been met, exercising a function in its nature judicial, but not as a part of the judicial system of the state in which appeals and writs of error are provided for. The functions of the circuit court are somewhat of the nature of those exercised by it where a property owner appeals to the circuit court from an assessment of his property made by the board of public works, for purposes of taxation. The court hears the evidence offered on behalf of the taxpayer and on behalf of the state, or any political division thereof interested, and from that evidence determines the value of the property for assessment purposes. Necessarily in deciding upon conflicting evidence the court exercises judgment; but that judgment is merely administrative and not judicial; its judgment is distinct from that belonging to it as a court or as a judicial tribunal. The court acts as an appellate tax tribunal. There is no appeal or writ of error allowed to his decision in such matter. *P. C. & St. L. Ry. Co.* v. *Board of Public Works,* 28 W. Va. 264. In *Town of Union Mines* case, *supra,* the opinion says: "The circuit court being engaged in the discharge of a legislative function in aid of the legislative department of the state government, the petitioners had no right to appear and contest the issuance of the certificate of incorporation in such manner as to be made parties litigant in a judicial sense, any more than before a committee of the legislature." The opinion also says: "This court could with as much propriety and with equal authority review the judicial functions exercised by the legislature in enacting the charter of a city or town having over two thousand inhabitants, as to review the proceedings now under consideration." In *Bloxton et al.* v. *McWhorter, Judge,* 46 W. Va. 32, the protestants appeared before the circuit court at the same term in which a charter of incorporation had been granted the town of Hill Top, objected to the authorization of a charter and moved the court to set aside its order, entered a

few days before granting the charter, on the ground that the survey and map filed with the application were not in compliance with the statute, and offered affidavits in support of their contention. The motion was overruled and the protestants objected and excepted. The protestants obtained a rule in prohibition against the commissioners appointed by the circuit court to hold the first election. The supreme court held that prohibition did not lie, as the circuit court was acting in a matter in which it had jurisdiction under the statute, and if it had erred or committed irregularities the same could not be corrected by prohibition. Again in *Morris* v. *Taylor*, 70 W. Va. 618, a case on which both parties here seem to rely, the constitutionality of the statute was again attacked by an information in the nature of a *quo warranto*, they having been an amendment to section 9 of chapter 47 since the decision in the *Town of Union Mines* case, which amendment gave the circuit court *discretion* to enter an order of record directing the clerk to issue a certificate of incorporation after satisfactory proof had been offered that all the preceding sections of the chapter had been complied with. Again the court upheld the constitutionality of the statute. The discretion vested in the court to refuse to grant the charter after having heard the evidence respecting the performance of the preliminary steps, and the conditions which would warrant its refusal, is held not to be such a delegation of legislative power as would vitiate the act. The varying conditions which would warrant a refusal in any particular application could not be anticipated by any fixed statutory rule, and hence the legislature adopted the method of leaving it to the discretion of the circuit court to say whether the grant should be extended in each particular case. Judge POFFENBARGER points out instances in which the court might with justification refuse the grant. He said the territory sought to be incorporated might contain a vicious population to whom it would be dangerous to intrust with local self government; or that the whole territory might be inhabited by lessees of one man, the leases soon to expire, and the obvious intent might be to burden the property owner with taxation in order to pay salaries of the officers to be elected. The territory sought to be included might be disproportionate to the number of in-

habitants therein, or laid off so as to reach far distant from the inhabited portions with the obvious design of including valuable property for purposes of taxation; hence, the legislature left it to the discretion of the circuit court to fix the exact extent of the territory to be included. Sec. 2, chap. 47, Code. By the 48th section of chapter 47, Code, a municipality once incorporated may change its corporate limits and take in adjoining territory by the affirmative vote of a majority of the people in the municipality and, in the proposed additional territory. The courts. cannot interfere to prevent, although the territory thus included may be farming lands which will be subjected to municipal taxes, although receiving no peculiar benefits therefrom. *Davis* v. *Point Pleasant,* 32 W. Va. 289. The grant is a legislative one to be attained by the people in a particular designated manner, and the courts have no power to abrogate it, if the grant is acquired in the manner authorized by the statute. It is very generally held that the legislative department of the government cannot delegate its power of legislation to either of the other coordinate branches of the government, but it may delegate the power to determine some fact or state of things upon which it will make its own action or grant depend. The power to create municipalities cannot be delegated, but the legislature may confer upon a court or some administrative officer or board the power to perform some judicial or ministerial act in the formation of such public corporations; or to ascertain and determine whether the conditions prescribed by the statute as to the formation of corporations and the granting of the charter has properly come into existence. *People* v. *Fleming,* 10 Col. 553; *Ford* v. *North Des Moines,* 80 Ia. 626; *State* v. *Simons,* 32 Minn. 540; *In re Sewickley Borough,* 36 Pa. St. 80; *Field* v. *Clark,* 143 U. S. 649.

On the question of the power of the courts to review proceedings for the formation of municipalities, it is quite generally held that the incorporation is not a judicial but a ministerial proceeding, and a court conducting the proceedings under legislative authority exercises the special ministerial functions conferred by the legislature, rather than the judicial powers derived from the constitution and general laws, and a proceeding for incorporation or the order or de-

cree therein is subject to review on appeal, writ of error or otherwise only when, and in the manner, especially provided by law.   28 Cyc. 168, and cases cited in the foot note, including our case of *In re Union Mines,* 39 W. Va. 179.   On this question of review, McQuillin, in his work on Municipal Corporations, says in Vol. 7, sec. 146, page 6465:

> "Questions of fact bearing on the expediency of the proposed incorporation are usually committed by the law to the court or tribunal hearing the application, and ordinarily appellate courts have no authority to review the exercise of that discretion except where an abuse of discretion is distinctly charged and clearly established, or where there is some illegality in the proceedings disclosed by the record."

And adverting to the discretion vested in the circuit court to determine (1) whether a charter shall be granted; (2) and if granted, the exact extent of the territory to be included, we again note that no provision is made for review by this court. Perhaps the discretion of the circuit court in passing upon the proofs that all of the preliminary steps required have been taken by the applicants, such as making an accurate survey and map, taking an accurate census of the resident population of the territory, affording opportunity to inspect the map, survey and census, and giving notice of the application to all parties interested in the proceedings where full information can be obtained at seasonable hours, giving notice that an election on the question of incorporation will be held; and certification of the result of the election duly held, in short, the performance of all prerequisite, preliminary steps; and the discretion to grant the charter and fix the exact boundaries, are not arbitrary; and if there has been an abuse of discretion, it may in a proper proceeding be reviewed and corrected. Whether the proper procedure has been followed, we will not stop to discuss; the case is here, and should be adjudicated without further costs.

Protestants say:   (1) that an accurate survey and map of the territory was not made as required by the statute; and (2) that opportunity for inspection of the survey, map and census was not afforded in the statutory manner.   The survey

and map describe the territory to be included by metes and bounds, but it is contended that the notice posted by the petitioners as required by statute also attempted to give the courses and distances, and these do not correspond with those on the map; for instance, in the notice one course is given as "N. 7° E. 1770 feet", whereas on the map it is "N. 7 E. 770 feet;" and one line along Elk Creek in the notice reads: "N. 25° E. 503 feet," whereas the map shows, "N. 23° E. 503 feet" to a stake on the south side of Nutter's Run, thus making a variance of two degrees in that line. An inspection of the map and notice would reveal to any voter or any person interested in the proceeding that there was a clerical error, and they could not be misled as to the boundaries of the territory to be included. The court treated it as a clerical error and made the corrections accordingly. It will be remembered that the statute gives to the court the discretion to fix the exact extent of the territory. The voters are bound to know that the court might do so. The survey, map and census, completed and verified, were left at Taylor's garage on Pennsylvania Avenue within the territory, and it is contended that this was not the place of business of a person residing within said territory, and was not subject to examination at all "seasonable hours." Affidavits filed are to the effect that these papers were subject to the inspection of any one interested, at all "reasonable hours." There is little distinction between "reasonable" and "seasonable," affecting the intent of the statute. The number of voters in the territory was 728, the number voting on the question of incorporation, 504; of which 448 were in favor of, and 56 against, incorporation. The notice must have substantially served its purpose. The notice was posted at Corbit's store, Wamsley's store and at the Fair Ground gate for the statutory time, and protestants say these were not three of the most "public" places. The affidavit of those who posted the notices says these places are three of the most "prominent" business places within the territory. The affidavits conflict on the question of the relative publicity of these places with other places. The court did not abuse its discretion in holding that notice of the election was sufficiently given. The number of votes cast indicates that the people had full notice.

It is earnestly asserted by protestants that the court clear-
ly committed error in not excluding the lands of Kester and
Mills, and especially the lands of the West Virginia Fair
Association. It is pointed out that there are but two resi-
dences, one the caretaker, on the 38.5 acres used as a place
for holding fairs for the benefit of the people of Harrison
and surrounding counties, and that the legislature, when it
enacted that the territory should not be more than a reason-
able amount proportionate to the number of residents there-
in, intended that such tracts, not immediately or prospective-
ly to be used for residential purposes, should be excluded.
The same contention is made as to the tracts owned by Mills
and Kester. By reference to the affidavits and map it is seen
that the lands of the Fair Association lie within the proposed
boundaries and on each side of which and near to which there
are a large number of persons residing. We think it was
peculiarly within the discretion of the court to decide under
all of the circumstances that these lands should be included.
A portion of the farm lands were excluded. There can be
no question but that the court was authorized in its discre-
tion so to do. The land of the Fair Association has been used
for many years for holding fairs and when the fair grounds
were first located and improved very few persons resided in
the near vicinity. It is contended that the corporation auth-
orities will levy burdensome taxes upon the land for muni-
cipal purposes and will exact license taxes from the conces-
sions which are carried on within the grounds, and it will be
impossible for the Association to continue to operate its prop-
erty, on account of these burdensome taxes. On the other
hand, many affidavits are to the effect that the fair grounds
are used about four days in each year for purposes of holding
fairs; and that during the remaining portion of the year the
grounds are used as a park where dance halls, carnival shows,
and amusements of various kinds are carried on, including
baseball, football and like games; and where disreputable peo-
ple assemble for drinking intoxicants and for immoral pur-
poses, both by day and night. The census showed that there
were 1521 persons living within the 247 acres sought to be
incorporated, of which 728 persons were voters. Evidently
the court took into consideration that taxation for the con-

duct of the affairs of the municipality would be equal upon all persons and properties within the corporate limits; and that while the burden of taxation might be heavy it would rest uniformly upon all; and no doubt it took into consideration the welfare of the large number of people affected, and, using its discretion expressly granted by the statute, decided to grant the charter.

Under all these circumstances can we say the action of the court was capricious, arbitrary and unwarranted? This is the crucial question which would be presented to us upon whatever procedure might be taken for that purpose. Upon a careful reading of the entire record, we have come to the conclusion that the court has not abused its discretion and that we cannot disturb its order directing the charter to issue.

*Affirmed.*