83 A.2d 117 (1951)
LEASURE et al.
v.
BEEBE et al.
Civ. A. No. 246.
Court of Chancery of Delaware, New Castle.
August 27, 1951.
Abraham Hoffman, Wilmington, for complainants.
H. Albert Young, Atty. Gen., and Louis J. Finger, Deputy Atty. Gen., for defendants.
*118 BRAMHALL, Vice Chancellor.
Plaintiffs filed their complaint in this Court, alleging that on November 20, 1950, the State Board of Education requested the Board of School Trustees of Glasgow School District No. 56 to hold a referendum election in that district to determine whether or not that district should consolidate with the Newark Special School District. Following this request, the Glasgow Board posted notices to the effect that said referendum election would be held on February 17, 1951. At said election the vote was 74 for consolidation and 69 against consolidation, or a majority of 5 votes for consolidation. However, 13 votes cast were challenged, 10 of which were based upon the contention of the challengers that the voters were not residents of the school district and therefore not entitled to vote. Defendants admitted the averments of the complaint with the exception that they denied that the 10 voters so challenged did not reside in the school district and that the State Board of Education arbitrarily and unlawfully declared that the qualified voters of the Glasgow District had voted in favor of the consolidation of the two school districts.
Plaintiffs have requested the Court to determine: first, that the action of the State Board of Education was arbitrary and unlawful; secondly, that the procedure followed by the State Board of Education and the two school districts was highly irregular and not in compliance with pertinent statutes; thirdly, that the defendants are estopped from denying the boundaries of the school district as furnished to the Glasgow Board of Trustees by the State Board of Education; and, lastly, that all of the 10 voters challenged were non-residents of the school district and therefore not entitled to vote at said election.
Defendants have requested the Court to determine: first, that the challenged voters were residents of the Glasgow District and therefore entitled to vote; secondly, that the action of the State Board of Education was in conformity with the Statute and not arbitrary and unlawful; thirdly, that this court does not have the power to review a determination made by the State Board of Education that such consolidation was practical and desirable; and, lastly, that this court cannot invalidate such an election in the absence of fraud or gross unfairness.
Were the 10 challenged voters properly entitled to vote at this school election?
The challenged voters all resided on farms which were either a part of the school district, or contiguous thereto. These farms will be known as, first, the Laws farm; secondly, the Alrichs farm; and, thirdly, the Jarman farm.
In substantiation of plaintiffs' contention, it was shown that sometime prior to the *119 election a description purporting to show the boundaries of the school district was given to certain members of the Board of School Trustees. It was contended by plaintiffs that these farms were not included in this description and that therefore the residents thereon should not have been permitted to vote.
Plaintiffs called as witnesses two members of the Glasgow Board of School Trustees. Their testimony, in substance, was that the farms in question were not included within the boundaries of the school district as these boundaries were furnished to the school district by the State Board of Education. The witness Brooks admitted, however, that a Mr. Brown, who at the time resided on the Alrichs farm, was at one time a member of the Board of School Trustees of the Glasgow School District.
Plaintiffs called Dr. George R. Miller, Jr., Superintendent of Public Instruction and Secretary of the State Board of Education. Dr. Miller testified that, upon request, his secretary furnished to certain of the trustees of the Glasgow School District a description of the boundaries of the district as obtained from certain old records of the Levy Court of New Castle County and interpreted by Raymond Robertson, who is connected with the New Castle County Board of Assessment and who is considered an authority on boundary lines in the state, particularly in New Castle County. Dr. Miller testified that other than this description no other description was furnished. He further stated that he wrote Mr. Laws, calling his attention to the fact that this description of the district did not apparently include Mr. Laws' farm. Mr. Laws protested and furnished Dr. Miller information to the effect that the Laws property had been transferred in 1880 by the Levy Court of New Castle County to the Glasgow School District. Dr. Miller further stated that this information was in his possession at the time the election returns from the Glasgow District were submitted to the State Board of Education and that, in turn, this information was given by him to the Attorney General when the Attorney General was requested to advise the State Board of Education relative to the protest against the validity of this election.
Plaintiffs also introduced in evidence a Pomery and Beers Geographical Atlas of the State of Delaware, dated 1868, containing a map purporting to set out the boundaries of this district in conformity with plaintiffs' contention.
On behalf of defendants, certain minutes of the Levy Court of New Castle County showing the transfer of a farm then owned by one R. T. Cann, consisting of 200 acres, to District No. 56 (Glasgow School District), were received in evidence. A brief of the title to this farm offered by the defendants indicated that it was the same farm as that now known as the Laws farm. Mr. Laws testified that he had resided on that farm for 45 years; that Allibone Cann, son of Richard T. Cann, was at that time the owner. Mr. Laws further stated that while living on that farm he had been a member of the Board of School Trustees of the Glasgow District for a period of 20 years, and that during that time, all the children living on that farm attended school in that district.
It is admitted by the defendants that the Jarman farm was not in any event within the boundaries of the Glasgow School District.
Defendants also offered in evidence a map found in the map files of the Wilmington Institute Free Library, purporting to be from the original survey of one Samuel N. Ray and one Jacob Price, dated 1849, and showing the boundaries of this school district. On this map is found the following: "The boundaries of the school district are laid down and they are traced upon the drafts of individuals residing in the different districts, and it is believed that they will be found to place the different farm buildings in their different districts".
Apparently, according to this map, both the Laws and the Alrichs farms were included within the boundaries of the school district. It is contended by plaintiffs that the partial chains of titles offered by defendants to substantiate their contention that the farms included within the district were the farms known as the Laws farm *120 and the Alrichs farm, do not necessarily prove that they were the same farms. It is true that in some instances there is a difference in names. However, the briefs of title seem to correspond, in this respect, with the two maps. For example, in one map the name is shown on the property in question as "W. Alrichs" and on the other as "Mrs. Alrichs". The brief of title shows that under the will of Wessel Alrichs, deceased, probated in 1850, he devised his estate to his widow, Mary Ann Alrichs, for life. It also shows the chain of title down to the present owner, Hugh R. Finger, et al. An examination of the two maps shows the residence to be in relatively the same position. No convincing testimony is offered to refute this evidence.
Every reasonable presumption will be indulged in favor of the validity of an election. The ballots received and counted by duly authorized officers are presumed to be legal. This presumption carries with it the further presumption that these voters were legally qualified. 18 Am. Jur. 374; Webb v. Bowden, 124 Ark. 244, 187 S.W. 461. The court is of the opinion that the evidence in this case does not overcome these presumptions, and this election should not be set aside on that ground.
Was the action of the State Board of Education arbitrary or unlawful?
Ch. 375, 47 Laws of Delaware 1949, p. 809, the statute under which State Board of Education proceeded in the instigation of the referendum election for the consolidation of the two school districts, is as follows:
"The State Board of Education may, when, in the Board's judgment, it is practicable and desirable, consolidate two or more school districts or a school district and a special school district, or two special school districts which are contiguous, provided that before doing so they post notice of the proposed change four weeks prior thereto on the front door of the school house or school houses and in at least ten other prominent and conspicuous places in the district or districts concerned. At the expiration of the time aforesaid the question of consolidation shall be submitted by referendum to the voters of the district or districts affected. The notice of the referendum shall distinctly state that in case the consolidation is effected, the bonds of both districts, if any, shall be assumed by the consolidated district and paid according to the original authorization, which was accomplished by the referendums in the respective districts before the bonds were issued, and that the rate of tax for current expenses in the consolidated district shall not be in excess of the highest rate that was levied in either of the districts to be consolidated without a new referendum to authorize such taxation. Said referendum vote shall be held within ten days of the expiration of such notice and shall be conducted by the Boards of School Trustees in said Districts and/or Boards of Education of the said Special School Districts. At said election any person shall be entitled to vote who would be entitled to vote at a regular school election of said school districts if held at that time.
"The question shall be determined by a majority vote in each district affected and the result shall be immediately certified to the State Board of Education."
It will be noted that this statute provides that when, "in the Board's judgment", it desires to consolidate two or more school districts, before doing so "they" must post notice of the proposed change four weeks prior thereto as provided by the statute. The statute further provides that the election shall be held within ten days of the expiration of such notice and shall be conducted by the boards of the districts involved. It further provides that the result of such election in any district shall be immediately certified to the State Board of Education.
The Court is of the opinion that the evidence in this case fails to show that the action of the State Board of Education was either arbitrary, unlawful or capricious. In the light of later developments, it would, of course, have been better if the election had been postponed until the State Board of Education had proceeded, in accordance with law, to determine definitely the boundaries of the Glasgow School District. *121 However, there is no evidence that its attitude in this respect, was unlawful or arbitrary. In many of the school districts of this state and elsewhere, even including some in the more populous centers, due, in part, to the disappearance of boundary lines and, in some instances, of county records, there has been a great deal of confusion relative to boundaries. Because of this confusion, it is, at times, necessary to refer to old records or documents or to obtain oral testimony from competent persons as to the boundaries of the districts and as to what has been considered the boundaries for a great many years. To clear up this confusion the Legislature of this State passed an Act, approved April 18, 1945, and known as Chapter 197, Vol. 45 Laws of Delaware 1944-45, authorizing and directing the State Board of Education to examine the available records of the boundaries of the several school districts of the state outside of the City of Wilmington and in case of doubt "after examination of said records, and/or after due hearing of the party or parties whose property or properties may be involved, shall have power to fix and establish such boundary or boundaries and to make and preserve a record of its decisions in a special book to be kept for that purpose and to file a copy of such record with the County Assessor of the county wherein the property or properties involved may be located".
The Act provided for an examination of the records. Due to the difficulty, in many instances, in finding these old records, presumably the State Board of Education would consider it advisable to give the parties interested notice and to take their testimony if they desired to be heard. It is reasonable, therefore, to assume that the State Board of Education, before proceeding under this Act to establish the boundaries of a school district, would want to be certain that it would have before it all of the evidence available. The information relative to the transfer of the Laws property by the Levy Court of New Castle County was not presented to the State Board of Education until at or about the time the election was held. At least there was not sufficient time before the election to comply with the Act. Can it be said that the failure of the State Board of Education, under such circumstances, to ascertain the boundaries of the Glasgow School District in accordance with this Act was such a violation of its duties as to warrant this court in invalidating the election held thereunder? The court does not so determine. In fact, in the case of the Laws farm, at least, where the children from that farm for over forty years attended the Glasgow School and where Mr. Laws was a member of the board of school trustees of that district for twenty years, the board of school trustees, having acquiesced for so long a period of time in accepting this farm as a part of the district, would be now estopped from claiming that the residents of the farms in question are not included in the district. Jones v. Camp, 34 Vt. 384; Pine River Township School District No. 1 v. Pine River Township Union School Dist., 81 Mich. 339, 45 N.W. 993; Greenfield School District v. Hannaford Special School Dist., 20 N.D. 393, 127 N.W. 499; Warren Township Rural School District Board of Education v. Warren School District Board of Education, 121 Ohio St. 213, 167 N.E. 872.
The Court therefore concludes that the election held on February 17, 1951, was a valid election and should not be set aside.
An order will be entered on notice.