[Civ. No. 4588.   Fourth Dist.   July 9, 1953.]

CLIFTON WILLIAMS et al., Appellants, v. C. D. McCLELLAN et al., Respondents.

Clifton Williams, in pro. per., for Appellants.

T. Bruce Smith for Respondents.

MUSSELL, J.—Plaintiffs seek, by this action filed July 16, 1952, to enjoin the defendants from incorporating ''Carlsbad,'' in San Diego County, as a city of the sixth class. Defendants demurred to the complaint on the grounds that the facts alleged were insufficient to constitute a cause of action against the defendants and that the complaint shows on its

face that the plaintiffs have no legal capacity to sue. The demurrer was sustained with time allowed to amend and plaintiffs elected to stand on the complaint as filed. Plaintiffs then appealed from the judgment sustaining the demurrer.

The defendants were elected as members of the city council of the city of Carlsbad pursuant to proceedings under title 4, division 2, part 1, chapter 1 of the Government Code. On June 24, 1952, an election was conducted by order of the board of supervisors of San Diego County and after completion of the canvass of the ballots, on July 11, 1952, the said board of supervisors determined and declared that the city of Carlsbad was incorporated as a sixth class city and that the defendants herein were the elected members of the city council. On July 16, 1952, a copy of this order of the board of supervisors was received by the Secretary of State and thereafter the incorporation of Carlsbad as a sixth class city was complete.

It is alleged in the first count of the complaint that plaintiffs are taxpayers, owning property in Carlsbad; that the election ordered by the board of supervisors was unlawful because it was ordered without any effort having been made to remove the area sought to be incorporated from the "charter area of said charter of the county of San Diego"; that the defendants are proceeding unlawfully to try to organize a city of the sixth class over said "Carlsbad area of the charter area of San Diego county" although the state Constitution provides that said charter became the organic law of said area on July 1, 1933, and it has remained as such ever since.

Plaintiffs' contentions in this connection are that the incorporation proceedings were void as there was no land available for a city of the sixth class; that San Diego is a chartered county, a municipal corporation, and as such has "complete county home rule" over the land involved; that section 34302 of the Government Code is superseded by section 7½ of article XI of the state Constitution and that the community of Carlsbad has been a part of a municipal corporation since the adoption of the county charter in 1933 and therefore not subject to incorporation. These contentions are without merit.

Article XI, section 6, of the state Constitution provides, among other things that the Legislature shall, by general laws, provide for the incorporation, organization and classification, of cities and towns, which laws may be altered, amended or

repealed. Section 34302 of the Government Code provides that "Any portion of a county, if such portion contains not less than five hundred inhabitants and is not incorporated as a city, may become incorporated pursuant to this chapter, and when incorporated is a sixth class city." The incorporation proceedings herein were conducted under such direct constitutional and statutory authority which authorizes the incorporation of a portion of a county. The Constitution, in article XI, section 7½, provides that any county may frame a charter for its own government consistent with and subject to the Constitution. The provisions allowable in such a charter are set forth in this section and there is no inclusion therein of provisions relating to the incorporation of cities within such counties. It is also provided in said section that upon approval by the Legislature, such charter shall become the charter of such county and shall become the organic law thereof relative to the matters therein provided, and supersede any existing charter framed under the provisions of this section, and all amendments thereof, and shall supersede all laws inconsistent with such charter relative to the matters provided in such charter.

As was said in *Wilkinson* v. *Lund,* 102 Cal.App. 767, 770 [283 P. 385]:

"It requires no argument to show that only such provisions of a county charter as are authorized by the Constitution supersede state laws in conflict therewith and then only to the extent that such provisions are not limited by the Constitution."

This court said in *Whelan* v. *Bailey,* 1 Cal.App.2d 334, 336-337 [36 P.2d 709]:

". . . [S]uch charters are authorized and may be framed for the purpose of giving a certain local control over the means of carrying out governmental functions in such counties, with the limitation that anything in the charters, so authorized, shall be consistent with the Constitution and shall relate only to matters authorized by that fundamental law. While a county is thus authorized to provide for a measure of self-government, this authorization·must be and is confined to providing for such functions as are properly governmental in their nature and which are consistent with our general scheme of government."

Since the powers of the county are set forth and enumerated in section 7½ of article XI of the Constitution, it is not mandatory that a freeholders' charter contain any

provisions relative to the formation of a municipal corporation within such chartered county. ■ If such provision were to be included in the charter, it would be in derogation of the express constitutional dictate that the creation of municipal corporations shall be provided for by the state Legislature. The charter of the county of San Diego is not before us. However, the statement is made in the respondent's brief, and not denied, that such county charter contains no reference or provision relative to the incorporation of cities therein. ■ Where, as here, the county charter is silent on the matter, the general law controls the procedure to be followed in the incorporation proceedings involved herein. (*Cline* v. *Lewis*, 175 Cal. 315, 318 [165 P. 915].)

■ Plaintiffs state in their opening brief:

"The law peak of this case.—The main legal proposition.—is this question.—Can the community of Carlsbad, which has been a part of the corporation of "County of San Diego" under a freeholders' charter for almost twenty years, secede from that union and be incorporated as a city of the sixth class under the general municipal incorporation law without any disentangling effort?"

This question is answered by the stated provisions in the state Constitution authorizing the Legislature to provide for the incorporation of cities of the sixth class and by the provisions of the Government Code, title 4, division 2, part 1, chapter 1. The provisions of the Constitution and statutes provide the method whereby the community of Carlsbad "seceded" and became "disentangled" from the county of San Diego.

. Plaintiffs also apparently contend that the county of San Diego, by adopting its freeholders' charter, became a municipal corporation, and as such, the sole repository for all of the powers, duties and functions of such a corporation. ■ However, there is a difference between a city and a county as was pointed out in *Kahn* v. *Sutro*, 114 Cal. 316, 319 [46 P.2d 87, 33 L.R.A. 620], where it is said:

" 'Municipal corporations proper are called into existence through the direct solicitation or by the free consent of the people who compose them. Counties are legal subdivisions of a state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former organization is asked for, or at least assented to,

by the people it embraces; the latter is superimposed by a sovereign and paramount authority.' ''

And in *County of San Mateo* v. *Coburn*, 130 Cal. 631, 636 [63 P. 78, 621], it is said:

''A county is a governmental agency or political subdivision of the state, organized for purposes of exercising some functions of the state government, whereas a municipal corporation is an incorporation of the inhabitants of a specified region for purposes of local government.'' (See, also, *Otis* v. *City of Los Angeles*, 52 Cal.App.2d 605, 611 [126 P.2d 945] and *Butler* v. *Compton Junior College Dist.*, 77 Cal. App.2d 719, 728 [176 P.2d 417].)

It is evident, therefore, that cities have reserved to them by law certain powers of self-government within the areas embraced by them that are not possessed by counties even though a county may have incorporated cities within its boundaries.

In the second count of the complaint plaintiffs are apparently contesting the legality of the election held on June 24, 1952, on the ground that because of a conspiracy between two county officials, namely: Bertram McLees, deputy district attorney, and Dean Howell, county supervisor, and a local newspaper, the election was caused to be carried for incorporation. No acts of misconduct of any of the defendants named herein are therein alleged and no cause of action for fraud is stated. In this connection it may be noted that counsel for plaintiffs, in his oral argument before this court, stated: ''I will be frank with the court. That fraud count was put in there as a sort of a safety valve.'' If we assume that plaintiffs are attempting to contest the election in count two of the complaint, they have failed to set forth therein any of the causes for such a contest as provided in section 8511 of the Elections Code. Furthermore, we find no allegations in either count of the complaint purporting to set forth illegalities or defects in the notices of incorporation election or in the proceedings had pursuant to the said provisions of the Government Code.

Carlsbad was incorporated as a city of the sixth class on July 16, 1952, when the copy of the order of the board of supervisors was received by the Secretary of State and the complaint herein was filed the same day. If the city was then incorporated, the proper remedy to test the incorporation of the area as a municipal corporation was by quo warranto proceedings (*Beaumont* v. *Samson*, 5 Cal.

App. 491 [90 P. 839]), and the regularity of the proceedings cannot be questioned in a suit by an individual or taxpayer. (*VanWagner* v. *MacFarland,* 58 Cal.App. 115, 120 [208 P. 345].)

The prayer of plaintiffs' complaint is for injunctive relief to restrain the defendants from performing further administrative or ministerial acts by virtue of the incorporation election. The complaint does not state facts sufficient to constitute a cause of action and the demurrer to both counts thereof was properly sustained.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied August 3, 1953, and appellants' petition for a hearing by the Supreme Court was denied September 4, 1953.