Robert B. TURKINGTON et al., Appellants,

v.

In the Matter of the Incorporation of the CITY OF KACHEMAK As a Municipal Corporation of the Third Class, Appellees.

No. 177.

Supreme Court of Alaska.

April 13, 1963.

Rehearing Denied June 3, 1963.

Quincy Benton, Homer, for appellants.

Harold J. Butcher and Robert C. Ely, Ely, Guess & Rudd, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The matter before us grows out of proceedings had in the superior court wherein certain residents of the Homer area of Alaska were attempting to incorporate the community of Kachemak as a third class city.

After an election held pursuant to order of the court the election judges certified to the court that twenty-two persons had voted in favor of incorporation and seventeen against. Included were seven absentee ballots, five favoring incorporation and two opposing.

Before a motion for an order of incorporation could be acted upon by the court, appellants filed a "complaint of contest" asking the court to declare the election void on various grounds. The court proceeded to hear the evidence presented and in due time decided the issues against appellants. An order was then entered declaring the City of Kachemak to be incorporated as a city of the third class.

██ The main question raised on appeal is whether the statute providing for the incorporation of third class cities which permits nonresident property owners to vote on the question is unconstitutional.

A 1951 act of the territorial legislature states:

"The procedure for the election, ballots, trustees, certificates of results, and court order thereon shall be in accordance with the provisions of Section 16–2–3, A.C.L.A.1949, other than each permanent adult inhabitant of, *as well as each owner of real property in*, such neighborhood' or district shall be a qualified elector and entitled to vote at all of such elections." [1] (Emphasis ours.)

Article V, section 1 of the constitution which became effective January 3, 1959 states:

"Every citizen of the United States who is at least nineteen years of age, who meets registration requirements which may be prescribed by law, and who is qualified to vote under this article, may vote in any *state or local election*. He shall have been, immediately preceding the election, for one year a resident of Alaska and for thirty days a resident of the election district in which he seeks to vote. He shall be able to read or speak the English language as prescribed by law, unless prevented by physical disability. Additional voting qualifications may be prescribed by law for bond issue elections of political subdivisions." (Emphasis ours.)

In view of the unequivocal wording of the constitution we must hold that the portion of the above statute which permits nonresident property owners to vote is not consistent with the constitution, and therefore did not continue in force as state law after the effective date of the constitution.[2]

Appellee argues that section 1 merely guarantees the right to vote to persons hav-

1. S.L.A.1951, ch. 46, § 3 (AS 29.20.050).

2. Article XV, § 1 of the constitution states:
"Section 1. All laws in force in the Territory of Alaska on the effective date of this constitution and consistent therewith shall continue in force until they expire by their own limitation, are amended, or repealed."

ing the enumerated qualifications and is not a prohibition against broadening the right so as to permit others to vote. We are unable to reconcile that argument with the second sentence of section 1 which states, with reference to who may vote in a state or local election:

> "He shall have been, immediately preceding the election, for one year a resident of Alaska and for thirty days a resident of the election district in which he seeks to vote."

The above sentence leaves no room for broadening the qualifications to permit a nonresident property owner to vote.

As far as we are aware only one jurisdiction has been confronted with this question. In Thomas v. Macklen [3] the supreme court of South Carolina held that an act of the legislature allowing nonresident property owners of a "resort community" to vote was in violation of the suffrage article of its constitution.

■ The next question to be decided is whether the irregularity of mailing absentee ballots to nonresident property owners and other claims of misconduct by appellants could have changed the result of the election.

The petitioners for incorporation in good faith followed the provisions of the statute when they obtained the names and addresses of all nonresident property owners from the public utility district and mailed them absentee ballots. To the best of their knowledge according to the statute these nonresidents were entitled to vote and it would have been highly irregular not to have accorded them this privilege. A total of seven absentee ballots were returned. At least some of the absentee ballots went to persons who were not property owners. Some may have been mailed to resident property owners who were temporarily ab-

sent from the area. One nonresident property owner testified that she voted against incorporation by absentee ballot. Otherwise the evidence with respect to the absentee voting is too vague to determine any fact other than that five voted in favor of incorporation and two against. The controlling fact, in our opinion, is that even if all of the absentee ballots were disqualified the outcome of the election would not be changed.

Appellants obtained affidavits from three persons who were possibly nonresidents who appeared and voted at election headquarters. The affidavits did not establish whether the affiants voted for or against incorporation. With evidence so inconclusive the court is not permitted to assume that the outcome of the election would have been changed by these votes. Appellants questioned the residence of six voters who came from the Soldotna oil fields to vote. These voters claimed to be residents of the area to be incorporated who were absent from time to time only because of temporary employment in the nearby oil fields. Appellants offered no substantial proof of nonresidence of these voters. They were not subpoenaed, nor is it known how they voted.

■ The prevailing rule is that an election may be contested only for malconduct, fraud or corruption on the part of an election official sufficient to change the result of the election. [4] The evidence in this case fails to disclose malconduct, fraud or corruption on the part of any official. On the contrary, it appears that the election officials tried their best to follow the orders of the court and the letter of the law, to the extent that any of our laws cover elections of this nature. We shall follow the general rule that every reasonable presumption will be indulged in favor of the validity of an election. [5]

3. 186 S.C. 290, 195 S.E. 539 (1938).

4. In re Contest of Election of Vetsch, 245 Minn. 229, 71 N.W.2d 652, 658 (1955); see S.L.A.1960, ch. 83, § 4.91 establishing this rule as to the grounds for con-

testing state elections. See also Ore. Rev.Stat. § 251.035(2) and Rev.Code Wash. § 29.65.100.

5. Leasure v. Beebe, 32 Del.Ch. 210, 83 A.2d 117 (1951).

We have reviewed the evidence with respect to appellants' other charges of misconduct on the part of election officials and conclude that the trial judge correctly ruled that none of them could have altered the outcome of the election. Appellants have not sustained their burden of showing that the alleged misconduct and irregularities could have changed the outcome of the election.

Our dissenting colleague is of the view that the courts have no jurisdiction to hear this action on the ground that after certification of the results of the election by the election judges, the superior court judge had no alternative but to perform the non-judicial act of declaring the community incorporated under the provisions of section 16–2–3 A.C.L.A.1949. Appellants could then have moved to avoid the act of incorporation under the provisions of sections 56–4–2 through 56–4–6 A.C.L.A.1949.[6] This would have required an action by the attorney general instituted at the direction of the governor to question the legality of the existence of the corporation.

In our view the proceeding was a contest of a local election which should have been heard and decided. The contest was commenced prior to the signing of the certificate of election. Since no corporation was yet in existence the quo warranto provisions contained in sections 56–4–2 through 56–4–6 A.C.L.A.1949 were not applicable.

Article V, section 3 of the constitution provides in part:

"* * * The procedure for determining election contests, with right of appeal to the courts, shall be prescribed by law."

We agree with our colleague that the legislature has not fully implemented this provision by providing for the contest of local elections.[7] This, in our view, is not fatal to jurisdiction to hear and decide a local contest. The constitution clearly recognizes that there shall be a right to contest elections. It also specifically provides that there shall be access to the courts to determine such contests. The fact that the legislature may not have specifically provided for any preliminary administrative determination of local election contests before resort could be had to the courts is not of grave consequence.[8] Since no procedure had been prescribed by the legislature for getting the contest before the courts, appellants followed the procedure provided for contesting state elections. We find this to have been a reasonable method of getting the matter before the court and that the jurisdiction of the court to hear the matter is recognized by the constitution.[9]

The judgment below is affirmed.

6. The election was held on July 25, 1961. On August 14, 1961 the court set a date for a hearing on the contest. At those times §§ 56–4–2 through 56–4–6 A.C.L.A. 1949 were in force. Effective January 1, 1963 §§ 56–4–2 through 56–4–6 A.C.L.A. 1949 were repealed by S.L.A.1962, ch. 101, §§ 31.02, 31.03. The relief provided for under those sections can now be obtained through the application of Civil Rule 91(a), Civil Rule 11 and AS 09.-50.310–09.50.380.

7. S.L.A.1960, ch. 83, as its title indicates, is a codification and revision of the law relating to state elections. This chapter is very comprehensive, but aside from defining a local election as " * * * any election held by a borough, city, school district, public utility district, service area, or other local unit of government" in § 12.01(2), its provisions are almost exclusively devoted to state and national elections.

8. As to state election contest the legislature has provided that any defeated candidate or ten qualified voters may contest an election by commencing an action in the superior court within ten days after completion of the state canvass. S.L.A.1960, ch. 83, §§ 4.91, 4.92. Section 4.93 provides that the judge shall thereupon determine the questions raised. No preliminary administrative determinations are provided for.

9. The jurisdiction of the superior court to hear and determine the controversy is also provided for in S.L.A.1959, ch. 50, § 17(1) (b).

AREND, Justice (dissenting).

I feel compelled to dissent from the majority for the reason that in my opinion the trial court had no jurisdiction under Alaska law to hear and determine the election contest in the manner it was prosecuted in this case, and correspondingly this court has no jurisdiction to hear the matter on appeal. Although the appellees have not challenged our jurisdiction or that of the lower court to entertain this case, the issue is one of which we must take cognizance on our own motion as a self limitation.[1] That is especially true in this case because article V, section 3 of the constitution states that "The procedure for determining election contests, with right of appeal to the courts, shall be prescribed by law."

In 1951 our territorial legislature delegated the special and exclusive authority to consider petitions for municipal incorporation of third class cities to the district court,[2] superseded by the superior court after statehood. The statutory proceeding for such incorporation consists of two steps.[3] First, the judge of the court to whom the petition is presented holds a hearing to determine whether it is for the best interest and welfare of the community to be incorporated as a city of the third class. This is a judicial function, for, if the judge decides in favor of the proponents for incorporation, "he shall, by order, so adjudge." At the same time he shall also order an election to be held for the purpose of determining whether the people of the community desire to be incorporated.[4]

The election is then held and its result certified by the election judges to the court, and the judge thereof "shall enter an order declaring the community incorporated * * * if a majority of the votes cast was in favor of such incorporation."[5] This constitutes the second step in the incorporation process and is strictly an administrative function, bare of any judicial action by the court or judge.

Contrasted with this administrative procedure in the second phase of the incorporation of third class cities is that provided by section 16–1–4 A.C.L.A.1949, as amended by S.L.A. 1960, chapter 37 for the incorporation of a first class city. In case of the latter type city, the judge of the superior court must likewise first judicially determine that it is for the best interest and welfare of the community that it be incorporated as a city and order an election.[6] After the election, the election judges must file a certificate with the clerk of the court showing the number of votes cast for and against incorporation.[7]

1. See Texas & Pac. Ry. Co. v. Gulf, Colo. & S. F. Ry., 270 U.S. 266, 274, 46 S.Ct. 263, 70 L.Ed. 578, 582 (1926); Golden v. Stansbury, 155 Cal.App.2d 480, 318 P. 2d 134, 136 (1957); Corbett v. Petroleum Maintenance Co., 119 Cal.App.2d 21, 258 P.2d 1077 (1953); Barnhouse v. Rowe, 178 Kan. 248, 284 P.2d 618, 621 (1955); In re Davis, 206 Okl. 403, 244 P.2d 554 (1952); Robertson v. Henderson, 181 Or. 200, 179 P.2d 742 (1947); Dux v. Hostetter, 37 Wash.2d 550, 225 P.2d 210, 213 (1950).

2. S.L.A.1951, ch. 46, §§ 1–3 (§§ 16–2A–1 through 16–2A–3 A.C.L.A.Cum.Supp. 1957), which incorporates by reference the same incorporation procedure prescribed for the creation of second class cities as set forth in §§ 16–2–2, 16–2–3 A.C.L.A.1949.

3. See note 2, supra.

4. Section 16–2–3 A.C.L.A.1949.

5. The words of section 16–2–3 A.C.L.A. 1949 pertinent to the subject matter of the text above are as follows:

"The judges of election shall certify to the District Court the result of the election giving the number of votes cast in favor of incorporation and the number of votes cast against incorporation * * *.

"As soon as such certificate is received by the District Court the Judge thereof shall enter an order declaring the community incorporated * * * if a majority of the votes cast was in favor of such incorporation, otherwise the Judge shall make an order declaring the community not incorporated. * * *"

6. Section 16–1–1 A.C.L.A.1949.

7. Section 16–1–3 A.C.L.A.1949.

Now comes the contrast, for section 16–1–4 A.C.L.A.1949 makes the next step in the incorporation process not an administrative function as in the case of third class cities but one of judicial determination. I quote from section 16–1–4 as follows:

"*If it shall appear* from the said certificate of election filed with the clerk of the district court [superior court], as aforesaid, that two thirds or more of the votes cast at said election were in favor of the incorporation and that the *provisions of law relating to incorporation have been substantially complied with,* then the district judge shall, by an order in writing entered in the records of the court, *duly adjudge and declare* that the community in which such election has been held is and shall be deemed to be a municipal corporation under the name of 'the city of (here insert the name),' and the same shall from thenceforth be deemed a municipal corporation possessed of the powers and privileges hereinafter prescribed, and such other powers as may be given by law * * *." [Emphasis added.]

This distinction between acts of a court or judge that are judicial and those which are administrative is not one of idle words. The Supreme Court of Colorado has marked the difference well in Enos v. District Court.[8] In that case it was pointed out that prior to 1921 the function of the county court in municipal incorporation proceedings was purely administrative under Colorado statute. When a petition for

incorporation was presented, the court was required to forthwith appoint five commissioners to call and hold an election. The commissioners, as judges and clerks of the election filed the results of the election with the clerk of the county court. If a majority of the ballots cast at the election were in favor of incorporation, the clerk was required to give public notice of the result. Certified copies of all papers and record entries relating to the matter on file in the clerk's office were then filed with the county recorder and secretary of state, and, as soon as the first officers of the city were elected and qualified, the incorporation was complete.

Then in 1921, the Colorado court points out, the state amended its laws so as to make the function of the court in the incorporation proceedings clearly judicial by providing that when it shall appear to the county court that the petition for incorporation was substantially conformable to law and that the election was substantially regular and fair and a majority of the ballots cast at such election was in favor of incorporation the court shall by order adjudge said incorporation to be complete.

As I have already demonstrated, our law on the incorporation of third class cities calls for a purely administrative function on the part of the trial judge by way of issuing an order of incorporation upon the filing by the election judges of their certificate showing a majority of the ballots cast to be in favor of incorporation. No appeal will lie from such a ministerial act, unless provided by statute,[9] or unless the act is plainly arbitrary or capricious.[10]

8. 124 Colo. 335, 238 P.2d 861, 865–868 (1951).

9. See Faulkner v. Board of Supervisors, 17 Ariz. 139, 149 P. 382 (1915); Common School Dist. No. 58 v. Lunden, 71 Idaho 486, 233 P.2d 806, 809 (1951); Reynolds v. Justice, 228 Mo.App. 246, 66 S.W.2d 169 (1933). Cf. also Anderson v. Joseph, 146 Cal.App.2d 450, 303 P.2d 1053 (1956).

10. West v. West Virginia Fair Ass'n, 97 W.Va. 10, 125 S.E. 353 (1924), in which it was held that, even though the trial

court was authorized to hold a hearing to determine whether the statute providing for municipal incorporation had been complied with, the act of the court in directing the entry of an order of incorporation was nevertheless ministerial, the court acting as an agency or tribunal representing the legislature and its findings and orders not being subject to review by an appellate court unless plainly arbitrary or capricious. To the same effect, see Wolf v. Young, 277 S.W.2d 744, 747 (Tex.Civ.App.1955).

We have no statute in Alaska permitting an appeal to this court from a ministerial act and the appellants do not claim that the lower court acted arbitrarily or capriciously but only that it acted erroneously.

It would appear, therefore, that this court has no authority to review this case. But, how then, one may well ask, is it ever possible to challenge the regularity or legality of an election for the incorporation of a third class city?[11] The appellants thought they saw the answer in the Alaska Election Code enacted in 1960.[12] They argued to the court below that section 4.91 of the Code authorized them to contest the election. That section reads:

"Any defeated candidate or 10 qualified voters may contest the nomination or election of any person or the approval or rejection of any question or proposition upon one or more of the following grounds: (1) malconduct, fraud, or corruption on the part of any election official sufficient to change the result of the election; (2) when the person certified as elected or nominated is not qualified as required by law; (3) any corrupt practice as defined by law sufficient to change the results of the election."

I have carefully examined and considered the Election Code in its entirety and have concluded that it was not designed or intended to cover municipal incorporation elections. The title of the Code, which reads: "An Act to codify and revise the law relating to state elections; to provide a comprehensive election code; and to provide for an effective date," would lead to the reasonable conclusion that the Code is limited to state elections. The same may be said of the text of the Code for it speaks only of party primary nominating elections; elections of presidential electors, congressmen, governor, secretary of state, and state legislators and judges; and certain "propositions" and "questions" for submission to public vote, which are specifically defined but in no way related to municipal incorporation elections.

Under our constitution, the power to create and dissolve municipal corporations and to provide the procedure therefor is vested in the legislative branch of the government.[13] The courts have generally held that the validity of the incorporation cannot be attacked because of irregularity in the proceedings in any action between private persons, as was here attempted, but only by quo warranto proceedings instituted by the state.[14]

In Alaska the writ of quo warranto has been abolished;[15] but the remedy thereby previously afforded has not been lost, for in a situation such as is claimed by the appellant to exist in this case, sections 56–4–2 and 56–4–6 A.C.L.A.1949 provide that an action may be maintained by the attorney general or his representative,[16] in the name of the state, whenever the governor shall so direct, against a public corporation "for the purpose of avoiding the act of incorporation * * * on the

11. Election contests were unknown to the common law. Jurisdiction in the courts to entertain such actions is purely statutory. McCall v. City of Tombstone, 21 Ariz. 161, 185 P. 942 (1919); 3 McQuillin, Municipal Corporations § 12.22, at 125 (3d ed. 1949).

12. S.L.A.1960, ch. 83.

13. Alaska Const. art. X, § 7.

14. Morin v. City of Stewart, 111 F.2d 773, 775, 129 A.L.R. 250 (5th Cir. 1940); Williams v. McClellan, 119 Cal.App.2d 138, 259 P.2d 12, 15 (1953); Enos v. District Court, 124 Colo. 335, 238 P.2d 861, 868–869 (1951); Bishop v. Shawnee & Mission Twps., 184 Kan. 376, 336 P.2d 815, 818 (1959); 1 Antieau, Municipal Corporation Law § 108 (1958).

15. Section 56–4–1 A.C.L.A.1949.

16. Section 56–4–6 A.C.L.A.1949 required the "prosecuting attorney" to commence the action directed by the governor to avoid an act of incorporation; but upon the advent of statehood a department of law was created, with an attorney general as its principal executive officer, to represent the state in all civil actions in which the state is a party. S.L.A.1959, ch. 64, § 9 (§ 2A–1–9 A.C.L.A.Cum.Supp.

ground that such act * * * was procured upon some fraudulent suggestion or concealment of a material fact by the persons incorporated, or some of them, or with their knowledge and consent * * *."

There is wisdom in the legislature in thus removing the existence of municipal corporations from attack by private litigants. For, as the Supreme Court of Michigan observed many years ago:

"[I]t would be dangerous and wrong to permit the existence of munici-

1959). The attorney general, with the governor's approval, is authorized to engage attorneys-at-law to appear for him in "any court distant from the capital." S.L.A.1959, ch. 128, § 1 (§ 9-1-16 A.C.L.A.Cum.Supp.1959).

palities to depend on the result of private litigation. Irregularities are common and unavoidable in the organization of such bodies; and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons." [17]

For the foregoing reasons I conclude that we are without jurisdiction in the case and that the appeal should be dismissed.

17. Clement v. Everest, 29 Mich. 19, at 22 (1874), cited and quoted from, with approval by the Supreme Court of Kansas in the case of Atchison, T. & S. F. Ry. v. Wilson, 33 Kan. 223, 6 P. 281, 284 (1885).