No. 15,713.

FRIESEN ET AL. *v.* PEOPLE EX REL. FLETCHER ET AL.
(192 P. [2d] 430)

Decided March 22, 1948.

1

Mr. THORNTON H. THOMAS, JR., for plaintiffs in error.

Mr. ARTHUR C. GORDON, Mr. J. WOODSON RAILEY, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

THIS is an action in the nature of quo warranto brought by the people of the state of Colorado upon the relation of B. H. Fletcher and others, against respondents as members of the Board of Supervisors and Board of Appeals of the Webb Soil Conservation District, to require respondents to show by what right or authority they claimed to be members of such boards or to exercise the power and perform the duties of such officers. The relators also pray that the proceedings creating said district be decreed to be null and void and of no force or effect by reason of certain alleged irregularities therein. The trial court found in favor of the relators and against the respondents, and the case is here on writ of error to review the judgment.

In the respondents' brief, it is said that, "The case was actually tried and decided upon the following issues: (a) The Jurisdiction of the District Court of Prowers County to hear and determine the cause. (b) The validity of the petition presented to the State Board for the formation of the District. (c) The validity and correctness of the canvass of the results of the election on the question of the formation of the proposed District by the State Board."

It is contended by respondents with respect to point (a) that the trial court had no jurisdiction of the action because, as is said, the Supreme Court has original jur-

isdiction to try quo warranto proceedings under the Constitution, and consequently, "the district court can have no jurisdiction because courts of concurrent jurisdiction cannot have the right of review of decisions of each other."

■■ The distinction between original quo warranto proceedings in this court and the district court was fully discussed by us in *People ex rel. v. District Court*, 37 Colo. 443, 86 Pac. 87, 13 L.R.A. (N.S.) 768. It can serve no useful purpose to repeat here what we there said. We definitely held that article VI, section 11, of the Constitution conferred jurisdiction on the district court of all causes of action including quo warranto, and that section 3 of article VI confers upon this court the power to issue high prerogative writs of quo warranto with the authority to hear and determine. It is likewise clear from these provisions that the jurisdiction of both courts being created by the Constitution, the jurisdiction of each was necessarily excluded from the other. The rules involved are discussed in *Wheeler v. Northern Colorado Irr. Co.*, 9 Colo. 248, 11 Pac. 103; *Clark v. Utilities Com.*, 78 Colo. 48, 239 Pac. 20; *People ex rel. v. Tool*, 35 Colo. 225, 86 Pac. 224.

The right to bring quo warranto proceedings in the district court has many times been recognized under circumstances similar to those here involved. *Norton v. People ex rel.*, 102 Colo. 489, 81 P. (2d) 393; *Harris v. People ex rel.*, 102 Colo. 496, 81 P. (2d) 383; *People ex rel. v. Newton*, 106 Colo. 61, 101 P. (2d) 21; *People ex rel. v. Mosco*, 114 Colo. 464, 167 P. (2d) 949. In each of the above cases the district court properly entertained jurisdiction, and in each, this court exercised its constitutional right of review.

Respondents, however, cite *People ex rel. v. Letford*, 102 Colo. 284, 79 P. (2d) 274, as authority for their contention that this court, under the Constitution should assume original jurisdiction. That case was brought by the attorney general in his official capacity, and in the

decision we pointed out that, "the issue requires a judicial determination of the validity and constitutionality of the Water Conservancy Act," and that such act "invites such a proceeding and fixes the time within which the action may be brought * * *." The act to which reference is made expressly provides: "If an order be entered establishing the district, such order shall be deemed final and no appeal or writ of error shall lie therefrom, and the entry of such order shall finally and conclusively establish the regular organization of the said district against all persons except the State of Colorado, in an action in the nature of a writ of *quo warranto*, commenced by the *Attorney General* within three months after said decree declaring such district organized as herein provided, and not otherwise. The organization of said district shall not be directly nor collaterally questioned in any suit, action or proceeding except as herein expressly authorized." S.L., '37, c. 266, §7.

By the terms of the conservancy act involved in the above case, the judgment of the district court was made final and conclusive as to "all persons except the State of Colorado" from which judgement no writ of error would lie except "in an action in the nature of a writ of quo warranto commenced by the attorney general." The act precluded the bringing of such suit by the people on the relation of individuals. From an examination of the act as a whole, in the light of our construction thereof in the above case, it is obvious that the legislature intended that the validity of the proceedings in the district court could not be questioned, except by the high prerogative writ of quo warranto authorized by section 3, article VI, of the Constitution.

The present action was brought upon the relation of individuals, as above mentioned, and not by the attorney general, the duly constituted legal representative of the people. Neither has the State Soil Conservation Board appeared or asked to intervene herein or in any manner challenged the trial court's jurisdiction. No official of

the state has asserted herein that the sovereignty of the state or its prerogatives are involved or that the liberties of the people are affected. This proceeding is, as the trial court properly held, primarily between individual citizens or groups entirely local in character, and it cannot injuriously affect the people of the state at large.

We conclude that the writ in the nature of quo warranto issued in the instant case was not one within the intent of the above provision of the Constitution, and that the district court had full jurisdiction to hear and determine the issues herein.

■ With respect to point (b) concerning the sufficiency of the petition to initiate the proceedings for the formation of the district, the pertinent portion of section 5 of the act, S.L. '41 c. 203, provides: "If in the opinion of the state board the petition and the accompanying map or plat are sufficient and it appears to the state board that the organization of the proposed district is feasible and practicable and is required for the preservation of the health, prosperity and welfare of the State of Colorado and its people, then the state board shall proceed" with the election in a manner thereafter set forth.

By the above section, the state board was granted authority to determine, ex parte, the sufficiency of the petition. There is no provision for notice or hearing on the validity of the petition. The act simply provides that if the board finds certain facts to exist, it shall proceed as thereafter set forth. Having found the petition sufficient and the required facts to exist, it was mandatory, under the act, that the board fix the time and place of, and make all other arrangements concerning, the election. There is no provision for a review of the board's decision on sufficiency of the petition. The findings of the board necessarily became final, in the absence of a review. Rule 106 (a) (4), R.C.P. Colo., provides a plain, speedy and adequate remedy for reviewing the decision of the board as to the sufficiency of the petition, by

virtue of which rule the district court is authorized to determine whether or not the board had jurisdiction or abused its discretion.

We have, in addition to the remedy afforded by the rule, approved an action to enjoin the placing of illegal measures upon ballots. *Elkins v. Milliken,* 80 Colo. 135, 249 Pac. 655, cited in note, 70 A.L.R. 733.

■ Simple justice requires that the relators should have had the determination of the board promptly reviewed and that they could not sit idly by until all the arrangements for the election had been made, the expenses thereof incurred, notices prepared and published, ballots printed, polling places provided for, the election actually held, returns canvassed, results certified, an adjourned election held, and the officers of the district elected to manage. its affairs, without action of any kind. After waiting almost four months and when all of the above things have been done, relators are not in a position to question the sufficiency of the petition or the validity of the findings of the board.

Such is the effect of our holding in *Denver v. Londoner,* 33 Colo. 104, 107, 80 Pac. 117, where we said, inter alia: " * * * The owners are not entitled to so petition by the fundamental law. The legislature might have dispensed with this prerequisite. The board of public works, it is true, would be without jurisdiction to take the preliminary steps in the absence of such petition, and no doubt, in such case, up to the time when the city council acts upon their recommendation as to the creation of a paving district and determines that the necessary petition subscribed by the owners has been presented to the board of public works, the latter could be enjoined from presenting any recommendation to the city council; but there is a stage in the proceedings when the question of the sufficiency of the petition and the number of owners subscribing it is no longer open, if the city. council, in passing the ordinance creating the district, has found the facts from which it can be in-

ferred that the law in this respect has been complied with. This is a matter which the legislature, in its discretion, has the authority to commit to the finding and determination of the city authorities."

It is true that the statute here under consideration does not expressly provide that the findings of the board "shall be final and conclusive" as did the charter section under consideration in the Londoner case, but the effect is the same. It was the duty of the board to decide the sufficiency of the petition, and if sufficient, to order an election. By the very nature of the situation its decision had to be final unless reviewed by the courts in the manner indicated.

By reason of the above delay, during which the board proceeded with its statutory duties for a long time and at great expense, the relators forfeited their right to assert or claim the insufficiency of the petition or irregularity of the preliminary proceedings. *Fredericksen v. Denver,* 108 Colo. 286, 115 P. (2d) 643. The decision by the board on the sufficiency of petition to initiate the proceeding is now final and conclusive and will not be disturbed.

■ The last and principal contentions of respondents' point (c), relate to the validity of the organization, election, and canvassing the votes thereof. The trial court held that the majority of the legal votes cast was against the organization of the district and that the election was null and void. The respondents contend that the court in so ruling, erred in four respects: (1) In its interpretation of the phrase "actually operated in person or by agent"; (2) In its interpretation of the phrase "title of record"; (3) In permitting proxy voting; and (4) In recanvassing votes.

With respect to the first point, section 4 of the act, S.L. '41, c. 203, provides, inter alia: "That the right to sign any such petition or to sign any petition or to vote upon any matter concerning the organization * * * of any soil conservation district, existing or proposed, shall

be limited to landowners who are qualified under the provisions of this section, as follows: * * * (2) Persons owning land within a proposed or existing district and not actually residing within it boundaries *who actually operate in person or by agent* their own lands within such district * * * ."

The real question here presented concerns the intention of the legislature in the adoption of the above section of the act. Was it the intention that nonresident landowners who leased their lands to others should be thereby deprived of their rights to vote in district proceedings while those who operate their lands through an agent are permitted to vote in such proceedings? The trial court found that owners of land of record, regardless of their place of residence and irrespective of whether the land is leased, were entitled to vote, and that any other construction was so strained and narrow as to render the act unconstitutional and void. In this connection the court pointed out that the district had the power under the act, to, inter alia, levy taxes and assessments upon the land, and under the respondents construction the nonresident landowners would have no opportunity to be heard with respect thereto.

In considering the question of intent, we are at once confronted with the legislative mandate that the act "shall be construed liberally in order that the purposes herein expressed may be accomplished." The purposes referred to and the powers and duties of the district are as set forth generally in *People v. Parker,* 118 Colo. 13, decided this date, and the opinion in that case should be read in connection herewith.

It is clear that the objects and purposes of the act will be best promoted by the trial court's construction of the act permitting all the owners of record to vote. In this we are fortified by the fact that since the rendition of the trial court's decision September 5, 1944, the general assembly adopted an amendment, chapter 229, S.L. '45, effective May 3, 1945, under which all

owners of record are authorized to vote in district proceedings. This circumstance might well be considered as a legislative declaration that such was its original intention when the above section 4 was adopted, and thereby dispels all doubt as to such legislative intent.

From the foregoing it is apparent that the respondents' contention as to the definition of the above phrase is too narrow and strained, and that the owner of land in the district is entitled, as the trial court properly found, to petition and vote in such proceedings without regard to the method employed in operating the land.

Point (2) upon which respondents rely for reversal, is based upon the contention that the trial court's interpretation of the phrase "title of record" as used in the act is erroneous.

Section 4 of the act authorizes landowners of the district to vote on the question of creating the district, and defines a landowner as one in whom the "title of record" is vested on the date of such election. In their brief counsel for respondents point out that there is no dispute between the parties as to the meaning of the above phrase as it relates to "persons who are purchasing land under contract and owners who have neglected to record their deeds," and further, that the only difference between the parties on the question of the meaning of the phrase exists with regard to "cases where the record owner of the property is deceased."

█ █ The only instance within the above category where the record owner is deceased, and which was discussed in the briefs, is that of the Minnie M. Hammock estate. Her heirs were Mrs. Frank Little, Mrs. Virgie Lee Haggard and Mrs. G. Wilkerson. The record shows that all of said persons voted against the formation of the district and that their votes were excluded by the trial court because their title did not appear of record. The ruling being in favor of respondents, it is incompetent to specify alleged error based thereon. It is unnecessary for us to pass upon the question for the further reason that

the result of the election will not be affected thereby.

With respect to point (3) regarding proxy voting, it is contended that such voting is invalid because: "The act provides that the voting shall be by secret ballot. * * * A vote by proxy is not such a secret ballot." It is also contended that such voting "is in violation of section 11 of article VII of the Constitution of Colorado, which requires the general assembly to pass laws to secure the purity of elections and to guard against abuses of the elective franchise. * * *" No authorities are cited in support of this contention and we have found none. It is true that under the Constitution it is the duty of the legislature to preserve the purity of elections. There is nothing in the record to indicate that the legislature failed in this duty. Whether the provision for proxy voting is wise or otherwise is not of judicial concern. Voters both for and against the proposal to create the district availed themselves of the use of proxies as the act permits.

With respect to point (4) it is contended that the court committed error in regard to canvassing votes cast at the election. The trial court found that the votes of Paul Wagner, C. A. Denham and Gladys Oman, being cast in favor of the district, should not be counted. Wagner's vote was eliminated because he owned no land in the district at any time during the proceeding. Denham was deceased at the time of the election and his proxy was therefor ineffective. Gladys Oman's proxy was admittedly not signed by her but by Remus Oman, and therefore, could not be considered. It is not seriously contended by respondents that the court erred in excluding the above three ballots. The ruling was correct and will not be disturbed on this review.

It was stipulated between the parties that Exhibit G represented a correct canvass and record of the votes cast at the election except as certain votes may be challenged on trial by the parties. The exhibit shows that the total vote at said election was fifty votes for,

and forty-three votes against the organization of the district. Deducting the three votes illegally counted for the district, the total vote would be forty-seven votes for, and forty-three against. Since only seven names on exhibit G were challenged, exclusive of the three names above mentioned, the result of the election is wholly dependent upon the correctness of the trial court's canvass of said seven votes.

The court found that the votes against the formation of the district of T. J. Steward, Walter L. Myers, William Paradise, Thomas D. Hoover, C. C. House, Donald House, and Irma Hardin, were legal and should have been counted. With respect to said voters it is not disputed that Steward was eligible to vote, that he actually did vote against organization of the district, but that said vote was not counted. Walter Myers lived in Arvada, Colorado, owned land in the district and had an agent looking after his property for him, who did some listing in 1943. Thomas D. Hoover, Donald E. House, C. C. House, and Irma Hardin lived outside the State of Colorado, but rented or leased their land in the district to others. It is conceded William Paradise was qualified to vote. All seven voted against forming the district, and in the light of the foregoing their votes should be counted.

In addition to the above, it is contended that Irma Hardin's proxy was given by telegram and therefore ineffective. Since a ruling upon this point would in no way affect the outcome of the election, we deem it unnecessary to pass upon it.

It is not seriously disputed that the trial court properly excluded the vote of Luther Henry who voted against organization, and therefore his vote should be deducted. We conclude that the ruling of the trial court with respect to the above eight votes is correct and it will not be disturbed. There should therefore be added to the votes against the formation of the district seven votes, and one vote deducted therefrom, making a total

of forty-nine votes against organizing the district and forty-seven votes in favor thereof.

The other points mentioned in the briefs have been carefully considered, but we find it unecessary to pass upon them for the reason that the result of the election would not be changed by a ruling thereon, or because they are without merit.

The judgment is affirmed.

MR. JUSTICE HILLIARD dissents.