No. 16,726.

Enos et al. *v.* District Court of First Judicial
District in and for the County of Arapahoe et al.
(238 P. [2d] 861)

Decided November 13, 1951. Rehearing denied December 10, 1951.

336

Mr. Charles R. Enos, Mr. C. Charles Buchler, Bernice M. Buchler, for petitioners.

Mr. John E. Fitzpatrick, for respondent Johnson.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Concerning the general subject matter here involved, this court in case No. 16717, on July 23, 1951, denied a petition in original proceedings for a writ in the nature of certiorari because no final judgment or decree of the lower court appeared. Petition for a writ in the nature of prohibition then was filed on July 31, 1951. On August 7, rule to show cause was issued and, on request, oral arguments were heard. On October 1, the rule to show cause was discharged without written opinion. On October 10, the petition for rehearing now before us was filed. █ Upon consideration of the petition for rehearing, we are confident that this is a matter of great public importance; that because there is no final judgment,

petitioners cannot proceed here by writ of error; and, further, it is apparent that we would not affirm a judgment entered on the findings as made by the trial court. We have now determined to entertain the petition and order the writ to issue. Our authority is conferred by our state Constitution and is not dependent upon, nor wholly governed by, statute or rules of procedure.

We are called upon to determine whether or not the trial court acted without, and in excess of, its authority and abused its discretion in a quo warranto proceeding filed October 11, 1950 against the mayor and a board of trustees of the Town of Greenwood, alleging, in substance, that due to irregularities involved in the incorporation of the town, the town has no right or authority to exist as an incorporated town, and that the defendants, petitioners here, have usurped their respective pretended offices and concluding with a prayer that the incorporated town be adjudged an unlawful usurpation of municipal government; and that the pretended officers be ousted therefrom. Further it was alleged that all of the acts and doings of defendants are contrary to the form of statutes in such case made and provided, and against the peace and dignity of the State of Colorado.

Quo warranto proceedings was instituted by Clarence Johnson, a property owner in the purported town of Greenwood Village, as a private individual in the name of the people, after having made a request upon the district attorney of the district in which the purported town is located, to institute the action and requested the district attorney that in the event he did not find it convenient to accede to the request, that he be permitted to bring the action on behalf of the people as a private relator. The district attorney declined to act on the ground of pressure of other duties, and gave his permission to the relator to institute the proceeding in behalf of the people on his personal relation or on the relation of any other private relator.

338

The defendants, petitioners here, promptly filed a detailed motion to dismiss on the following defenses:

(1) That the action is not brought or maintained by the people of the state of Colorado; that said action can only be brought and maintained by the people through the Attorney General of the state or the district attorney of the district in which the town is situated, and that the district attorney could not lawfully designate any authority to the relator; and that a private relator cannot attack the incorporation of a municipality.

(2) That the relator is estopped from maintaining the action because the petition for the incorporation of the village was presented to the county court on or before August 14, 1950, and the present action was not instituted until after the election at which the question of the incorporation of said village was submitted to a vote of the inhabitants.

(3) That relator is barred and estopped from maintaining the action because it was not instituted until after the election of mayor and trustees was held.

(4) On the further ground that it appeared to the county court where the petition for incorporation was filed that it was substantially conformable to law and the statutes of the state of Colorado in such cases made and provided.

(5) That the judge of the county court, prior to the institution of this action, approved said petition for incorporation of the village and by order found that said election at which the question of incorporation was submitted to the inhabitants was regular and by said order declared said incorporation to be complete.

This motion was overruled on each and every ground presented and thereafter defendants, petitioners here, filed an answer setting out the grounds contained in their motion to dismiss, together with other additional defenses, namely, that the relator has no right to question or attack the organization of the town for the reason that he has no different or additional interest in the subject

matter in the action than that of any other taxpayer and resident of the village and has no special, different or additional interests in the subject matter; that rule 106 (a) (3), R. C. P., Colo., is unconstitutional when applied to this action; that if the rule is applied to this action, it is contrary to chapter 80, page 264, Session Laws of 1939, which provides that the rules of civil procedure shall neither abridge, enlarge, nor modify substantive rights; that the relator is barred from maintaining the action because it is an attempt to test the validity of a municipality and not the right of certain persons to hold office within such municipal corporation; and that such an action constitutes a collateral attack upon the orders and judgment entered by the county court.

To this answer relator filed a reply in which, among other things, he alleged that immediately after the election of the officers of the pretended town, this action was filed; that to file an action before the election of the officers would be a recognition of the validity of the corporation; and that this action is an action to contest the right of the elected officers to hold office as mayor and trustees of a village which plaintiff claims does not exist.

For reasons that will hereinafter appear, the motion to dismiss should have been sustained. This writ could be issued on any one of several grounds without further discussion.

In apparent compliance with section 2, chapter 163, '35 C. S. A., as amended S. L. 1941, p. 755, and S. L. 1945, p. 708, which is as follows: "When the inhabitants of any part of any county not embraced within the limits of any city or incorporated town shall desire to be organized into a city or incorporated town they may apply by petition in writing, signed by not less than seventy-five (75) of the qualified electors, who are landowners of the territory to be embraced in the proposed city or incorporated town, to the county court of the proper county; which petition shall describe the territory proposed to be embraced in such city or incorporated town, and shall have

annexed thereto an accurate map or plat thereof, and state the name proposed for such city or incorporated town, and shall be accompanied with satisfactory proofs of the number of inhabitants within the territory embraced in said limits; *provided, however,* that in no case shall there be incorporated in such city or incorporated town any undivided tract or tracts of land consisting of forty or more acres lying within the proposed limits of such city or town, without the consent of the owner or owners thereof, unless such land be surrounded on at least three sides by platted land; provided, further, that if the territory to be embraced in the proposed city or incorporated town is situate in a county of twenty-five thousand (25,000) inhabitants or less, forty (40) qualified electors and landowners may petition to organize into a city or incorporated town in the manner hereinabove provided." on August 14, 1950, there was filed a petition signed by eighty persons, claiming to be owners of real property located in the territory therein described and sought to be incorporated, and being qualified electors who sought by petition to have the question of the incorporation of the described territory as a municipal corporation under the name of the Town of Greenwood Village, submitted to the vote of the electors of the said district pursuant to the provisions of section 3, chapter 163, '35 C. S. A., which is as follows: "When such petition shall be presented, the court shall forthwith appoint five commissioners, who shall at once call an election of all the qualified electors residing within the territory embraced within said limits as described and platted, to be held at some convenient place within said limits, the notice for which shall be given by publication in some newspaper published within said limits, if any there be, for three successive weeks, and by posting notices in five public places within said limits. If there be no newspaper within said limits, then such notice shall be given by posting notices in eight public places within the same; said posting and the first publication to be not less than

three weeks preceding such election. Such notice shall specify the place and time of such election; it shall contain a description of the limits of said proposed town or city, and state that a description and plat thereof are on file in the office of the clerk of the county court. Said commissioners shall act as judges and clerks of the election, and shall qualify as required by law for judges and clerks of county elections, and shall report the result of the ballot to the court aforesaid. The ballots used at said election shall be 'For incorporation' or 'Against incorporation.' "

Section 4 'of said chapter 163, '35 C. S. A. is as follows: "If it shall appear to the court that the petition for incorporation was substantially conformable to law and that said election was substantially regular and fair and a majority of the ballots cast at such election was in favor of incorporation, the court shall by order adjudge said incorporation to be complete, and the clerk of the court shall, immediately on the return of the commissioners being filed in his office, give notice of the result by publication in a newspaper, or if no newspaper be published in the county, by posting in five public places within the limits of the proposed city or town; and in such notice he shall designate to which of the classes of incorporation hereinafter prescribed such city or town shall belong. A copy of the notice, with proper proof of its publication, shall be filed with the papers and a certified copy of all papers and record entries relating to the matter on file in the clerk's office shall be filed in the recorder's office of the county, and in the office of the secretary of state."

According to the petition herein, and not challenged or denied, the county judge entered an order approving said petition and calling for an election to submit the question of such incorporation and appointed five commissioners to conduct the election as of the 8th day of September, 1950; that at said election one hundred thirty-eight votes were cast, seventy-four votes in favor

of incorporation and sixty-four votes against; that on the 11th day of September, 1950, in accordance with the statute, the judge of the county court entered its order adjudging said incorporation complete.

In pursuance of section 6, chapter 163, '35 C. S. A., which follows: "When the incorporation of such city or town is completed, the commissioners mentioned in section 3 of this chapter shall give notice, for two consecutive weeks, of the time and place of holding the first election of officers therefor by publication in a newspaper, or if none be published within the limits of such city or town, by posting in five public places within the limits of the same. At such election the qualified electors of such city or town residing within the limits of such city or town shall choose officers therefor, to hold until the first annual election of officers according to its grade, as hereinafter in this law prescribed. Said commissioners shall act as judges and clerks of the election, and otherwise it shall be conducted, and the officers elected thereat shall be qualified, in the manner prescribed by law for the election and qualification of precinct officers." the commissioners theretofore appointed gave notice of the first election of officers of said municipality to be held on October 6, 1950, at which election these petitioners were duly elected mayor and trustees respectively of said municipality.

Immediately following the results of the election, the first meeting of the board of trustees was held and the organization was completed by the designation of certain individuals as clerk and recorder, and treasurer; designation of official newspaper; provision for the adoption of rules and order of business; the adoption of a corporate seal; bond for treasurer; and provided for an oath of office and the designation of a fiscal year of the corporation. It is alleged that thereafter the board of trustees of said municipality continued to hold regular meetings on the first and third Monday of each month to and including the present time, and at such meetings enacted

other ordinances of a general nature such as required for the levy and collection of traffic fines, fixing the budget and mill levy for 1951, also a zoning ordinance and various other ordinances considered necessary for the functioning of a municipal corporation, and are still continuing to function as municipal corporate authorities.

Thereafter and on October 11, 1950, the relator hereinabove mentioned filed the complaint in quo warranto alleging that fewer than seventy-five of the signers of said petition for the incorporation were bona fide landowners in the territory described, or bona fide residents or inhabitants of the territory, and specifically named nine individuals as not being qualified electors within the district. By this action the relator admittedly attacked the validity of the incorporation as well as seeking the ouster of the defendants, petitioners here, as officials of the town that he contended did not exist.

Neither the record of the county court nor the district court is before us, but it is not denied, either in oral arguments or brief, that the judge of the county court entered an order adjudging said incorporation to be complete on the 11th day of September, 1950. Neither is it denied that the commissioners gave proper statutory notice of the time and place of holding the first election of officers; nor is it denied that the defendants, petitioners herein, were the duly elected officers at the election held pursuant to notice.

Due to an apparent misconception of some of our decisions prior to the amendment in 1921 of our laws relating to the incorporation of cities and towns, and the necessity of construing our present law and determining other questions here presented, for further guidance, we attempt to determine the following questions: (1) In the absence of a statute so providing, can a quo warranto proceeding attacking the validity of a de facto municipal corporation be instituted and maintained other than by the state through its duly delegated authority? (2) Can the sufficiency of the original petition for incorporation

be attacked after an election has been held thereon and the qualified electors have spoken? Is the petition in such a case functus officio? (3) Under our decision in the case of *Friesen v. People, ex rel.*, 118 Colo. 1, 192 P. (2d) 430, is the relator estopped from maintaining this action?

Generally, these questions were presented to the trial court, which, after hearing, made its findings adverse to petitioners on these general questions; however, no judgment has been entered on the findings at the time of filing the petition for rehearing now before us.

The pertinent statutes involved have been hereinbefore set out and to clarify the misconception of some of our decisions above mentioned, it must be pointed out that virtually all of the decisions of this court concerning quo warranto proceedings involving ouster of municipal officials and the validity of municipal corporations were based on the following statutes appearing in the 1908 Revised Statutes of Colorado relating to incorporation of towns and cities:

"6514. * * * Sec. 2. When the inhabitants of any part of any county not embraced within the limits of any city or incorporated town, shall desire to be organized into a city or incorporated town they may apply by petition in writing, signed by not less than thirty of the qualified electors who are land owners of the territory to be embraced in the proposed city or incorporated town, to the county court of the proper county; which petition shall describe the territory proposed to be embraced in such city or incorporated town, and shall have annexed thereto an accurate map or plat thereof, and state the name proposed for such city or incorporated town, and shall be accompanied with satisfactory proofs of the number of inhabitants within the territory embraced in said limits; *Provided, however,* That in no case shall there be incorporated in such city or incorporated town any undivided tract or tracts of land consisting of forty or more acres lying within the proposed limits of such city or town,

without the consent of the owner or owners thereof, unless such land be surrounded on at least three sides by platted land. [L. '91, p. 387, §1; amending G. S., §3299; G. L., §2642."

"6515. * * * Sec. 3. When such petition shall be presented, the court shall forthwith appoint five commissioners, who shall at once call an election of all the qualified electors residing within the territory embraced within said limits as described and platted, to be held at some convenient place within said limits, the notice for which shall be given by publication in some newspaper published within said limits, if any there be, for three successive weeks, and by posting notices in five public places within said limits. If there be no newspaper within said limits, then such notice shall be given by posting notices in eight public places within the same; said posting and the first publication to be not less than three weeks preceding such election. Such notice shall specify the place and time of such election; it shall contain a description of the limits of said proposed town or city, and state that a description and plat thereof are on file in the office of the clerk of the county court. Said commissioners shall act as judges and clerks of the election, and shall qualify as required by law for judges and clerks of county elections, and shall report the result of the ballot to the court aforesaid. The ballots used at said election shall be 'For Incorporation' or 'Against Incorporation.' [G. S., §3300; G. L., §2643."

"6516. * * * Sec. 4. If a majority of the ballots cast at such election be in favor of such incorporation, the clerk of the county court shall, immediately on the return of the commissioners being filed in his office, give notice of the result by publication in a newspaper, or if no newspaper be published in the county, by posting in five public places within the limits of the proposed city or town; and in such notice he shall designate to which of the classes of incorporation hereinafter prescribed such city or town shall belong. A copy of the notice, with proper

proof of its publication, shall be filed with the papers, and a certified copy of all papers and record entries relating to the matter on file in the clerk's office shall be filed in the recorder's office of the county, and in the office of the secretary of state. [G. S., §3301; G. L., §2644."

"6517. * * * Sec. 5. When certified copies of the papers and record entries are made and filed, as required by the preceding section, and officers are elected and qualified for such city or town as hereinafter provided, the incorporation thereof shall be complete; whereof notice shall be taken in all judicial proceedings. [G. S., §3302; G. L., §2645."

"6518. * * * Sec. 6. When the incorporation of such city or town is completed, the commissioners mentioned in section two of this act shall give notice, for two consecutive weeks, of the time and place of holding the first election of officers therefor by publication in a newspaper, or if none be published within the limits of such city or town, by posting in five public places within the limits of the same. At such election the qualified electors of such city or town residing within the limits of such city or town shall choose officers therefor, to hold until the first annual election of officers according to its grade, as hereinafter in this act prescribed. Said commissioners shall act as judges and clerks of the election, and otherwise it shall be conducted, and the officers elected thereat shall be qualified, in the manner prescribed by law for the election and qualification of precinct officers. [G. S., §3303; G. L., §2646."

The parenthetical notation at the conclusion of each section indicates that these statutes were in effect over a long period of years until the 1921 amendment statutes appear as hereinbefore set out.

Prior to the adoption of our rules of civil procedure, especially rule 106 (a) (3) relied upon by counsel for relator, in 1941, the following section 321 of our then Code of Civil Procedure was in effect, but now repealed:

§321. * * * An action may be brought by the district attorney in the name of the people of this state, upon his own information, or upon the relation and complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within his district in the state, and it shall be the duty of the district attorney to bring the action whenever he has reason to believe that any such office or franchise has been usurped, intruded into or unlawfully held, or exercised by any person, or when he is directed to do so by the governor; and in case such district attorney shall neglect or refuse to bring such action upon the complaint of a private party, such action may be brought by such private party, upon his own relation, in the name of the people of the state. [L. '87, p. 192, §289; Code '08, §320.]"

█ This former code provision had the force and effect of a statute. Our present rules of civil procedure, and particularly rule 106 (a) (3) can only operate on or with respect to matters of procedure, therefore, the particular section here relied upon is not a statute and does not, and cannot, have the force and effect of a statute, and cannot enlarge or abridge substantive rights. *Crowley v. Hardman Bros.*, 122 Colo. 489, 223 P. (2d) 1045.

█ A casual, comparative reading of the old statutes and the 1921 amendment thereof, all of which are herein fully set out, at once discloses that the function of the judge of the county court under the old statutes was purely administrative, while under the 1921 amendment, the functions are judicial. In other words, under the old statute the action of the county judge, coupled with other requirements, completed the acts of incorporation, while under the 1921 amendment, when it appeared to the county judge that the petition for incorporation was sub-. stantially conformable to law and that said election was substantially regular and fair, and a majority of the ballots cast at such election was in favor of incorporation, it was mandatory upon the judge to order and adjudge

that the incorporation be complete. In the case before us, the county judge made such finding and judicially decreed the incorporation to be complete. It is significant to note in section 6 of the new or amended laws, it provides *when the incorporation of such city or town is completed,* the commissioners then give two consecutive week's notice of time and place for holding the first election of officers by publication or by posting within the limits of the incorporated town.

There is no denial or contention that these sections of the new law were not substantially complied with. That being true, a de facto, if not a de jure, municipal corporation was established, which brings us to the first question to be answered: Can an individual maintain this action, and further, can such authority be delegated by the district attorney? The answer must be no. The case before us is admittedly one designed to attack the validity of the corporation.

██ ██ Municipal corporations of the character here involved are created only upon the authority of the state by legislative enactment, and are, if created thereunder, solely for public and not private purposes, and become an arm of the state. The right to exist as such a corporation is derived solely from the state and any action aimed to attack its legal existence after it becomes at least a de facto corporation must be confined to the state through its official representative, and such official representative in the absence of a statute, cannot delegate such authority. Here the assumed relator has no interest in the subject matter distinct from the general public in the territory involved, and there is no denial that, in the last analysis, he was acting in his individual capacity. On this particular question the case of *State ex rel. Wah-we-yea-cumin v. Olson,* 107 Minn. 136, 119 N. W. 799, published at length in 21 L.R.A., New Series, page 685, and the notes thereto are directly in point and show that the majority of the cases hold as hereinabove outlined.

If the rule we have adopted herein applied in a quasi

municipal corporation as in the case of *Tulare Irrigation Dist. v. Shepard,* 185 U.S. 1, 32 Sup. Ct. 531, 46 L. Ed. 773, it applies with equal if not greater force in the case of a de facto municipality. The rule was applied in *Tulare Irrigation Dist. v. Shepard,* supra, in the following language:

"From the authorities, some of which are above cited, it appears that the requisites to constitute a corporation *de facto* are three: (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise. The case at bar contains these requisites. There was a general valid law under which a corporation, such as the defendant is claimed to be, could be formed; there was undoubtedly a *bona fide* attempt to organize thereunder, and there has been actual user of the corporate franchise. In the progress of the attempt to organize the district the determination of the board of supervisors was made, under the provisions of the statute, declaring the body to be a duly organized irrigation district. Subsequently officers were elected and took office and have ever since discharged the duties thereof under the statute, and a special election was held to determine the question of issuing bonds, and the bonds were issued pursuant to the result of such election, and suits have been commenced in the name of the corporation. In brief, if anything can constitute a *de facto* corporation, the defendant herein constitutes one.

\* \* \*

"Being a *de facto* corporation, the general rule is that none but the State can call its existence in question. The courts of California agree that such is the rule. *People v. Montecito Irrigation Company,* 97 California, 276; [32 Pac. 236]; *Quint v. Hoffman,* 103 California, 506, [37 Pac. 514, 777], supra; see also, Cooley on Constitutional Limitations, page 312, 4th ed.; *Swartwout v. Michigan Air Line Railroad Co.,* 24 Michigan, 389, 393."

In a case involving similar questions, we approve the logic and reasoning in *State v. Vickers*, 51 N.J.L. 180, 17 Atl. 153, contained in the following quotation:

"It is manifest that this is an attempt to do indirectly what this court has already declared cannot be done directly—that is, for a private relator to call in question the existence of one of these bodies that are public corporations at least *de facto*, if not *de jure*. Such an endeavor is obviously possessed of all that impolicy that forms the basis of the prohibition alluded to; for that basis is, that it was highly inexpedient that these municipalities, being the depositaries of a part of the governmental power of the state, should have their very being put at hazard whenever any member of the community saw fit to make the assault. Being public institutions, it was determined that their existence was not to be challenged except by the state, through its attorney general, he acting *ex officio*, as the representative of the public, and that in such a procedure his name could not be used, *pro forma*, by a private relator.

"This being the rule and its reason, it is manifest that it would be absolutely preposterous to permit the corporate existence to be called in question by a private person, for the purpose of dismemberment, for in depriving the municipality of its organs, you practically dissolve it. If this defendant is to be ousted from his office of common councilman, on the ground that the corporation has no life, so, for the same reason, can his associates be removed from their posts; and the same fate would await all the other functionaries of the borough, and thus this local government would, for all useful purposes, be at an end. In substance, therefore, the result of this indirect attack, by a private hand, would be the same, as would be the direct attack, on the same ground, upon the corporation; and the latter has already been declared by this court to be not permissible.

"It is proper to further remark that this circuitous assault upon the corporate existence has an objection

additional to those inherent in an immediate assault, for in its processes the municipality is not brought into court, and, therefore, has no opportunity of defending its life.

"Our conclusion is, that there is no legal ground laid for ousting the defendant from the office held by him, and, consequently, he is entitled to judgment on this demurrer."

On the question mentioned in the last cited case, that of this being a circuitous assault on the corporate existence without the municipality being a party to the action, and also contained in a motion to strike filed by relator wherein he said, "that to file an action before the election of the officers would be a recognition of the validity of the corporation, and that this action is an action to contest the right of the elected officers to hold office as mayor and trustees of a village which plaintiff claims does not exist, and that the within action was filed immediately after the pretended election of said officers." This position by the relator was undoubtedly prompted by the opinion of this court in the case of *People ex rel. v. Stratton*, 33 Colo. 464, 81 Pac. 245, decided under our former statutes and not applicable here. We are inclined to the view that when relator delayed his action until after the election of the officials, in conformity with the statute, and attempts by this action to oust the officials, he has recognized the legaliy of an existing office and thereby recognizes the existence of a municipality with offices to be filled, then he cannot, by this action, seek to have the proceedings by which the office was created declared void. The right to attack the existence of the corporation as a private individual is a substantive right and any rule under which relator proceeded which would enlarge or abridge such substantive right cannot be recognized as having the force or effect of a statute. All of this having been made to appear to the trial court in the motion to dismiss, it should have determined that there was no statutory authority permitting

the district attorney to delegate the right to institute the action, and, therefore, the court would have no jurisdiction to entertain the action.

The next question: Can the sufficiency of the original petition for incorporation be attacked after an election has been held thereon and the qualified electors have spoken? Is the petition in such case functus officio? The original petition in the county court as filed had life and effect, and was found by the county judge to be sufficient on its face to set in motion the means by which the qualified voters of the district could speak. At this point, and before election, as was said in *Friesen v. People ex rel., supra,* there is a remedy afforded by the rules in an action to determine whether the county judge had exceeded or abused his discretion and to prevent the placing of the question before the people. No such action having been taken, after the question was determined at an election at which all qualified electors within the territory were privileged to vote, then the petition lost all of its virtues or deficiencies and further life could not be injected into it by virtue of any attack on its sufficiency. It was sufficient and served its full purpose, and it was judicially so determined. We quote with continued, and now emphasized, approval, the statement of the late Mr. Justice Hays in *Friesen v. People ex rel., supra,* as follows: "Simple justice requires that the relators should have had the determination of the board promptly reviewed and that they could not sit idly by until all the arrangements for the election had been made, the expenses thereof incurred, notices prepared and published, ballots printed, polling places provided for, the election actually held, returns canvassed, results certified, an adjourned election held, and the officers of the district elected to manage its affairs, without action of any kind. After waiting almost four months and when all of the above things have been done, relators are not in a position to question the sufficiency of the petition or the validity of the findings of the board."

While the decision in that case involved the formation of a soil conservation district, it applies, as we believe, with greater force and effect in the case of a de facto municipal corporation, and, is therefore, as to many matters involved, decisive and controlling in the case before us, and upon it as authority, we now say the relator herein was, and is, estopped from maintaining this action.

From an examination of relator's pleadings herein, we are confident that he followed the case of *Norton v. People ex rel.*, 102 Colo. 489, 81 P. (2d) 393, decided by this court on June 20, 1938, and in fairness to counsel for relator, we now distinguish that case from the case at bar in the question here controlling and in the following respects.

The direct question whether an individual, as in this case, can attack the validity of a de facto corporation was not raised in the Norton case. We find upon a re-examination of the briefs in that case that it was contended by respondents that relator was not a proper party because he was not a resident, or an elector, and that he was not a freeholder in the territory involved. Without consideration of the question now before us on that point, we there determined that he was a proper party because of the payment of taxes on property within the territory, and there the relator stood squarely on the proposition that he had authority from the district attorney. The question of the right of the district attorney to delegate the authority was never raised in the case, and, finally, the decision in the Norton case was upon the determination that the county court had not entered a decree finding the corporation to be complete. Regardless of the apparent conflict, we see no reason to overrule the Norton case, supra, because the questions controlling here were not presented or considered therein.

What we have said regarding quo warranto is, of course, limited to the facts in this case.

It is ordered that the alternative writ herein be made permanent.

MR. JUSTICE STONE, MR. JUSTICE CLARK and MR. JUS-
TICE KNAUSS specially concur.

MR. JUSTICE ALTER dissents.

MR. JUSTICE CLARK specially concurring.

With respect to the foregoing opinion I concur in the
result because of my firm conviction that under the pres-
ent amended statute, section 4, chapter 163, '35 C.S.A.,
the judgment of the county court declaring the incorpo-
ration of the Town of Greenwood Village to be complete,
is definitely a judicial act, as distinguished from a min-
isterial function; that the county court is the proper
forum, within which one feeling aggrieved should file his
protest, or otherwise attack the proceedings had in the
county court, in such manner as to him might be deemed
advisable; that in the event of decision by the county
court adversely to such protest, review thereof might be
had upon writ of error from this court; and that the jur-
isdiction of the county court, being prescribed by the
statute, and its judgment being final and reviewable,
may not be collaterally attacked by action brought in any
other tribunal, or in manner otherwise than as herein-
above outlined.

The principal distinction, to my mind, between this
case and that of *Norton v. People, ex rel.*, 102 Colo. 489,
81 P. (2d) 393, is that, in the instant case the county
court of Arapahoe county actually entered its formal
judgment in manner as contemplated by the statute,
while in the Norton case no final judgment was entered
in the county court.

The author of the opinion to which this special con-
currence is attached, adds to the issue, as I have herein
discussed it, three "other questions"—(1) as to the first,
concerning quo warranto proceedings, confined and lim-
ited as it is in its statement, I am in agreement. (2) On
the second question holding that the original petition for
incorporation became functus officio upon the holding of

the election, and that it may not thereafter be attacked, I am not in agreement with the views expressed in the opinion. (3) On the third question presented, I am in general, though not specifically, in full agreement with the opinion.

My personal view of the whole situation, however, is that in the case now before us we are not called upon to determine any of the three questions, and it is my belief that we should not do so unless and until such time as a case may come before us wherein it is required that said matters be settled in order to reach a proper conclusion.

To the extent that the opinion is in accord with the views which I have herein expressed, I concur. To the remainder thereof I respectfully dissent.

MR. JUSTICE STONE and MR. JUSTICE KNAUSS concur in this opinion.